Walter R. DULEY, Appellant,

v.

Marie LEININGER, Respondent.

No. 9947.

Missouri Court of Appeals,
Springfield District.

Sept. 5, 1975.

Gary L. Smith, Powell, Ringer & Smith, Dexter, for appellant.

Paul McGhee, Dexter, for respondent.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

In this jury-waived case the court entered judgment against 87-year-old Walter R. Duley in his multiple-count suit against his daughter Marie and her husband. Plaintiff sought to recover the value of certificates of deposit, government bonds and silver coins allegedly converted by the defendants, to obtain cancellation of deeds conveying certain real estate to the defendants, and to recover punitive damages for alleged fraud and wrongdoing. Since this appeal was filed plaintiff has dismissed his son-in-law from the case and dismissed his appeal as to that portion of the judgment denying cancellation of the deeds. We affirm.

In this bench trial the scope of our review is governed by Rule 73.01, and while we review the case both upon the law and the evidence we give due regard to the opportunity of the trial judge to judge the credibility of the witnesses. Further, we accord deference to the trial judge's conclusions where there is conflicting testimony [*Schmitt v. Pierce*, 344 S.W.2d 120 (Mo. banc 1961); *Dill v. Poindexter Tile Co.*, 451 S.W.2d 365 (Mo.App.1970)], and the judgment is not to be set aside unless the evidence is palpably insufficient to sustain the lower court's findings and judgment. *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.*, 523 S.W.2d 173 (Mo.App.1975); *R. L. S. v. J. E. S.*, 522 S.W.2d 5 (Mo.App.1975).

Since no findings of fact or conclusions of law were requested or made we must assume all fact issues were found in accordance with the result reached. *Nutz v. Shepherd*, 490 S.W.2d 366 (Mo.App.1973).

We are obliged to accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard such testimony as is contrary thereto and not disturb the judgment unless it is clearly erroneous or, put another way, the evidence palpably insufficient. *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.*, supra; *Dill v. Poindexter Tile Co.*, supra.

Although plaintiff no longer raises any issue as to the deeds conveying his property, these conveyances shed some light on subsequent events and the viable issues in this appeal.

In the early 1930's the plaintiff operated a machine shop in Dexter, Missouri. He was married to Sophia and they had two children, Marie and John R. A man named Dock Morris worked for plaintiff for some period of time. Dock Morris' wife was Elizabeth Louise Penrod Morris, known as Lizzie.

In 1935 plaintiff conveyed all of his real estate, consisting of various town lots in Dexter, to his wife Sophia. Near the same time the Morrises moved from Dexter.

In 1959 Sophia and plaintiff conveyed a portion of the lots to Marie, reserving life estates. The remaining lots were similarly conveyed to their son, John R. Sophia died in 1966, and Marie and her husband moved from Michigan to Dexter. Plaintiff conveyed his life estate in some of the lots previously deeded to Marie to her, and she and her husband built a house on part of the realty.

In 1967 son John R. died intestate, leaving a widow, four daughters and a son, John W. In 1968 the widow and children of John R. conveyed back to plaintiff the lots deeded to John R. by his parents in 1959. Shortly thereafter, plaintiff conveyed several of these lots to John W. in fee. He then conveyed the other lots to his son's widow and daughters with a life estate reserved in himself. Plaintiff also transferred by bill of sale the personal property and fixtures of the machine shop to his grandson, John W.

In 1970 plaintiff released to Marie the life estate he had previously reserved in the remaining lots he and Sophia had conveyed to her in 1959.

The Honorable Wallace Morgan, deceased Dexter attorney, prepared all of the instruments except the 1970 deed, the latter having been prepared at plaintiff's request by the Honorable Elvis C. Mooney, Bloomfield attorney.

Over the years prior to 1971 the plaintiff had purchased government bonds and bank certificates of deposit. Originally these securities were issued in the joint names of plaintiff and Sophia, plaintiff and son John R., and plaintiff and Marie. After the death of his wife and son, plaintiff had the ownership of the bonds and certificates changed so as to be payable to himself or Marie, or the survivor.

Lizzie remarried in 1958 to a Mr. Pauden and for some time before 1971 this couple was living in Poplar Bluff, Missouri. Lizzie and plaintiff had been "engaged" for various periods of time during the years preceding 1971 but in September of that year "became engaged to get married" although she and Mr. Pauden were still residing together in Poplar Bluff and their marriage was not terminated by divorce until February 1973.

In September of 1971 plaintiff and Marie appeared at Attorney Mooney's office in Bloomfield. They had with them the bonds and certificates of deposit showing their joint ownership. Attorney Mooney knew both parties quite well since Sophia and Mrs. Mooney's mother were sisters and his father-in-law, Rand Evans, deceased, and plaintiff had in past years discussed plaintiff's property situation in Mr. Mooney's presence. Mr. Evans and plaintiff had discussed with him, the possibility the latter might be sued because of plaintiff's particular "situation" with another man's wife. Attorney Mooney was aware of the "situation" and the wife involved was Lizzie.

The testimony of plaintiff and Marie as to the purpose of the 1971 visit to and the events which transpired in Attorney Mooney's office conflict. The testimony of Attorney Mooney fully corroborates Marie's testimony and is here summarized.

Plaintiff was fearful he might be sued by Lizzie's husband, as well as by another party because of a recent automobile collision. He was apprehensive of potential judgment creditors obtaining the monies represented by the bonds and certificates and told Attorney Mooney he wanted Marie to have this money.

The attorney explained to plaintiff he could not prevent one with an existing claim from reaching the securities but as to future claims a present and complete transfer of ownership to the daughter would be effective. "I told [plaintiff] that his only alternative for future situations was to completely, if that's what he wanted to do, was give them, make an absolute gift, and explained to him if he did that, he never could get them back." Plaintiff said he did not want the securities back and handed them to Marie with the admonition to "go right then and have them transferred." He told Marie "not to give them back, not give the money back to him under any circumstances, even if he came and demanded it back." The bonds and certificates were in Marie's possession when she and her father left Attorney Mooney's office. Thereafter, the securities were reissued in her name alone.

Approximately a year later, in 1972, plaintiff and Marie returned to Attorney Mooney's office. Plaintiff was wanting assurance that Marie's sole ownership of the securities and the manner in which he had previously conveyed his real estate would prevent "them" from getting the money or real estate. "He wanted to be sure that it could not be reached, that it would stay in the name of the person that it had been placed in."

During 1972 plaintiff and Lizzie were seeing each other, although she and her hus-

band continued to occupy their home in Poplar Bluff. She told plaintiff they could not consummate their "engagement" by marriage until she could get "about $3,000."

On January 26, 1973, following a stormy session the day before between plaintiff and Marie, the daughter gave her father $3,000. He turned this money over to Lizzie, and she used a portion of it to take her husband to Texas in January and pay his apartment rent ($750.00) for a year.[1]

Lizzie obtained a divorce from Mr. Pauden in February 1973, and on March 30, 1973, she and plaintiff married. This suit followed May 7, 1973.

On the record before us we have no difficulty in affirming the judgment of the trial court. We defer to his determination of the credibility of the witnesses and his resolution of conflicting testimony concerning the key issue of whether plaintiff made a valid inter vivos gift of the bonds and certificates to his daughter in September 1971.

The elderly plaintiff, usually in response to leading questions propounded by his attorney, testified his transfer of ownership of both his real estate and the securities originated with his daughter; that he never intended to give Marie his money and the change of ownership of the securities was so he would get more money [interest]. He understood the various real estate conveyances were "wills" and "If I signed a deed I didn't know it." On cross-examination plaintiff did not recall talking about the money represented by the securities in Attorney Mooney's office, and said he did not deliver the securities to Marie at that time and did not talk to the attorney about having the joint ownership of the securities transferred solely to Marie. He denied his 1935 conveyance of all of his real estate to

his wife was prompted by his fear of being sued by the then Lizzie Morris.

There is substantial evidence to support the circuit court's conclusions. Attorney Mooney's positive and unequivocal testimony is sufficient evidence to find a valid gift from plaintiff to his daughter. A present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee result in a valid inter vivos gift. *In re Estate of Hoffman,* 490 S.W.2d 98 (Mo.1973). There is evidence of each of these elements, and Marie's ownership took effect immediately and absolutely in September 1971. *Wantuck v. United Sav. and Loan Ass'n,* 461 S.W.2d 692 (Mo. banc 1971), overruled on another point in *In re LaGarce's Estate,* 487 S.W.2d 493 (Mo.1972).

In his brief plaintiff contends he did not intend to make a gift of the securities to Marie. His words and conduct in Attorney Mooney's office refute this contention. No precise language is required in order to create a gift and one's conduct is an enlightening ingredient in discerning one's intent. *In re Estate of Hoffman,* supra at 103. Here, we have an expressed intent to give the securities to the donee accompanied by a physical delivery by the donor to the donee, in a third person's presence, of the subject matter of the gift. The donee, Marie, accepted delivery of the securities before leaving Mr. Mooney's office and immediately took the necessary steps to have the securities reissued in her name alone.[2]

Plaintiff also contends there existed a confidential and fiduciary relationship between him and his daughter and he was the victim of her undue influence—even while they were in Attorney Mooney's office. In furtherance of this position he also states that by reason of the cousin kinship be-

---

1. Another $200.00 was paid by Lizzie to *her* Poplar Bluff attorney as a retainer to initiate this suit.

2. Plaintiff also argues lack of acceptance by Marie. In addition to the facts recited showing an acceptance, plaintiff's argument

overlooks the rule that where a gift is beneficial and imposes no burden on the donee, acceptance will be presumed even if the donee never assumes possession. *In re Estate of Hoffman,* supra.

tween Marie and Mrs. Mooney a confidential and fiduciary relationship existed between plaintiff and Attorney Mooney.

 We have laboriously reviewed the transcript in its entirety. We are of the view a normal and natural daughter and father relationship existed between Marie and her father until a short time prior to his and Lizzie's marriage. Marie was opposed to the marriage and advised Lizzie that plaintiff did not have money or property. At the time of the visit to Mr. Mooney's office in 1971, the record strongly indicates the plaintiff knew what he was doing and why. The trial judge was in a position to carefully weigh the testimony of and observe the witnesses as they testified and determined the charges of undue influence and confidential and fiduciary relationship against the plaintiff. We find nothing in the record to support the charge of there being a confidential relationship between plaintiff and Mr. Mooney.

 The only evidence relating to the $500 in silver coins came from plaintiff. He said he had turned these coins over to Marie for "safekeeping" [buried under her house] and she had refused to give them back. Since other evidence, uncontradicted, demonstrates that plaintiff received $3,465 [cash and bills paid for plaintiff] from his daughter, and plaintiff pleaded defendant was entitled to credit of $3,000, we find no error in the judgment denying plaintiff recovery of the $500.

In view of the foregoing, plaintiff's points concerning interest on the securities and punitive damages are not for review.

The judgment is affirmed.

All concur.