S. G. ADAMS PRINTING &
STATIONERY COMPANY,
a corporation, Appellant,

v.

CENTRAL HARDWARE COMPANY, a
corporation, Respondent.

No. 39037.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 22, 1978.

Motion for Rehearing and/or Transfer
Denied Oct. 13, 1978.

Richard A. Stockenberg, St. Louis, for appellant.

Keith E. Mattern, St. Louis, for respondent.

WEIER, Judge.

This is an appeal from a suit brought by S. G. Adams Printing & Stationery Company (hereinafter S. G. Adams) against Central Hardware Company (hereinafter Central). The dispute arose over the refusal of Central to pay the price of office modules and their installation provided by S. G. Adams. S. G. Adams sued Central not only for the price but also demanded incidental storage and shipping costs. The case was tried without a jury and the trial court denied recovery to S. G. Adams. We affirm.

The trial court proceedings were marked by numerous conflicts in the testimony of agents for the principals who had drawn up and had acted upon the agreements between the parties. In 1971 Central asked for bids on erecting modular partition units (movable office structures with built-in desks and shelves) with which to furnish a portion of their new warehouse and sales facility. Tom Zensen acting as a purchasing agent for Central and Gene Adams as salesman for S. G. Adams were the principal negotiators.

Both parties agree that Gene Adams prepared two proposals and two line drawings indicating placement of the units on the warehouse floor plan; and furthermore, that Adams had given them to Zensen around August 17, 1971. Each proposal related to a line drawing, presenting two different configurations, although neither drawing took into account the position of the telephone or electrical outlets in the new building. On September 20, 1971, Adams went to Zensen's office to pick up a purchase order for the number of partition units agreed upon and across the face of this order, dated the twentieth of September, 1971, Zensen wrote out: "If not installed by Nov. 8 this order 'VOID.'" From this point on much of the testimony concerning succeeding events is in direct conflict.

Mr. Adams testified that when Mr. Zensen issued Central's purchase order on September 20, 1971, Zensen had the proposal of S. G. Adams for the sale and installation of nine buyers' offices and four managers' offices *and* the corresponding line drawing which did not comport with the electrical and telephone outlets in the new warehouse. Zensen testified that when he gave Adams the proposal on September 20, Adams inquired as to what sketch was being agreed to, whereupon Zensen directed Adams to discuss his detail with Fred Harre, an industrial engineer who had designed the warehouse for Central. Zensen testified he wanted to insure that the floor plan would allow for the desks to be placed directly over the telephone and electrical outlets. In contrast to this statement, Adams said that Zensen had specifically agreed to the line drawing (which did not detail the desks in relation to the outlets). Adams also denied that Zensen directed him to see Harre at this time. Within a few days Richard Clayton, S. G. Adams' sales manager, went to Zensen to tell him the manufacturer of the partition units could not meet the November 8 deadline. Both parties agreed to extend the deadline for two weeks to November 22.

Some time in October of 1972, Harre met Adams in Zensen's office and asked for a set of plans that would detail the desk layout on a floor plan which noted the placement of outlets. The next day Adams gave Harre a copy of the sketch submitted

with the purchase order that had been agreed upon in September. Harre rejected this drawing as worthless because there was no tie-in with the floor plan. Adams was instructed by Harre to prepare a more detailed sketch. Adams later submitted another drawing to Harre that was again rejected as insufficient because it did not designate placement of the desks to a floor plan which showed the position of the outlets. Harre rejected a third sketch but later accepted a fourth which did supply the necessary detail. After the acceptance of this, the fourth sketch, Gene Adams, by his own admission, made an inventory and notified Zensen that S. G. Adams had all the parts necessary to complete the partition configuration in accordance with the final plan.

An additional purchase order, dated October 6, was agreed to, calling for the purchase and installation of two additional partition units. However, there was nothing on the order which limited time for completion of the installation.

Although delivery of some of the partition units to Central's new warehouse began on November 16, the assembly of the units was not commenced until Friday, November 19. The four manager-unit partitions were installed but the desks, which used the partition walls for support, were never secured into the module frame. The eleven buyers' units were never successfully completed, there being a lack of parts available to erect most of the partitions. Later in the afternoon on Friday, the installation crew left for the day, with none of the eleven buyers' units or the manager units being totally assembled. Clayton called the distributor in Chicago, Illinois, to inquire about the availability of the pieces necessary for completion but at that time he was unable to reach the distributor.

Over the weekend of November 20 and 21 Cohen directed the employees of Central to dismantle the existing structures. Following this, desks from the old location were brought in and set up so that the office could be open for business as planned on Monday, November 22. Central stored the dismantled units in their warehouse and sent S. G. Adams a series of letters directing it to pick up the units. S. G. Adams eventually carted off the materials and filed suit to recover the price of the partitions, together with incidental fees and expenses consisting of moving and storage charges. The petition alleged that Central refused to allow S. G. Adams to complete their contractual obligation. In its answer to the petition Central alleged S. G. Adams was guilty of a material breach by failing to complete its obligation within the time specified for performance. No findings of fact or conclusions of law having been requested, the court entered a general judgment in favor of defendant.

Essentially, S. G. Adams centers its appeal around four contentions of error: (1) that the trial court's factual determination was unsupported by substantial evidence and against the weight of the evidence; (2) that the trial court erroneously applied the law when it failed to find that Central had materially breached the contract in refusing to allow S. G. Adams the opportunity to perform its obligation; (3) that there was error in not awarding incidental damages; and (4) that there was error in not finding there were two contracts and that they were severable.

Of crucial importance here is the fact that these issues were all raised following a non-jury trial and therefore this court is limited in its review of these issues by Rule 73.01 which requires that:

"[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ Additionally, we are not presented here with findings of facts or conclusions of law. Neither party requested these be made by the trial court. And when an appellate court is confronted with a record in which no findings of fact or conclusions of law were filed and none were requested,

all fact issues are to be deemed found in accordance with the results reached. The judgment is to be affirmed under any reasonable theory supported by the evidence. *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Company,* 539 S.W.2d 542, 545[1] (Mo.App.1976). The appellate court is also obliged to accept as true the evidence and permissible inferences which may be drawn, favorable to the prevailing party, and to disregard the contradictory testimony. *Duley v. Leininger,* 527 S.W.2d 456, 458[2] (Mo.App.1975).

The factual disputes which the trial court had to pass judgment on concerned, (a) whether Zensen had accepted the proposal, contingent upon receipt of a fully developed drawing which showed the partition units placed in relation to the electrical and telephone outlets; (b) whether S. G. Adams had a time deadline on the second purchase order and whether it had failed to meet this deadline; and (c) whether the partition units were completely erected and installed.

The importance of the first question, (a) *supra,* is that its resolution determines to what date for completion of performance S. G. Adams will be held. If there was a delay in the performance by S. G. Adams of the contract due to the acts of Central (major modification of configuration of partition units) then there might be a waiver of the contract completion deadline, *Artcraft Cabinet, Inc. v. Watajo, Inc.,* 540 S.W.2d 918, 925[14] (Mo.App.1976). Since there are no findings of facts, we are unable to conclude exactly what the trial court found. However, there is substantial evidence to support either of two propositions.

■ One, the trial court could have found that Zensen did not agree to the preliminary sketch accompanying the proposal contingent upon Harre's acceptance of a detailed drawing (which would show telephone outlets). When reviewing a decision where conflicting testimony has been heard at trial, an appellate court shall "give due regard to the opportunity of the trial judge to judge the credibility of the witnesses . . . [and] accord deference to the trial

judge's conclusions where there is conflicting testimony," *Duley v. Leininger, supra* at 458[1].

■ The trial court might have correctly found, instead, that even though there was a modification of the contract, there was no reason to grant an extension of time. The modification entailed nothing more than a sketching of a more detailed plan, which was completed in early November of 1971, and after its approval by Central, Adams assured Harre that all necessary parts, even taking into account the new configuration, were in stock. Using either of these two theories, the trial court's findings on this factual issue would be in accordance with the results reached.

The second factual issue which the trial court would have had to determine, (b) *supra,* was whether S. G. Adams had failed to meet the deadline of the second purchase order for the delivery and installation of two additional buyers' units. The trial court again was confronted with the resolution of this issue by adopting either one of two legal theories, both of which were reasonably supported by the evidence.

■ On one theory the court would have been required to find that the second purchase order, dated October 6, was merely a modification of certain provisions of the first contract. The parties to an executory contract are free to modify or revise provisions as long as there is an additional exchange of mutual consideration. *R–Way Furniture Company v. Powers Interiors, Inc.,* 456 S.W.2d 632, 637[4] (Mo.App.1970). Here, the quantity of buyers' units to be purchased and installed, and the price of the total package were modified. The second purchase order specified that the two buyers' units were "additional." This could well mean it was a supplement to the first order; that there was no change in the time provision; and hence the contract was void if the installation was not completed by the extended completion date of November 22.

Or the trial court might have determined that the second purchase order was a sepa-

rate contract. Generally, if no time for performance is noted on the contract, a reasonable time to perform is implied. *Artcraft Cabinet, Inc. v. Watajo, Inc., supra* at 925[13]. A "reasonable" time cannot necessarily be equated with an extension beyond the date by which the first contract was to be completed. Because of the urgency of defendant's needs to have installation completed by that date, the trial court could have found that a "reasonable" time to install the two additional units ended on November 22. Again, using either approach, a determination by the trial court that S. G. Adams failed to meet the time provision in the second purchase order, would have been reasonably supported by the evidence.

■ The final fact question, (c) *supra*, relates to whether S. G. Adams completed the erection of the partition units. A party may collect the contract price when there has been "substantially complete" performance. *State ex rel. Stites v. Goodman*, 351 S.W.2d 763, 766[1] (Mo. banc 1961); *Bullock Company, Inc. v. Allen*, 493 S.W.2d 5, 7[4] (Mo.App.1973). More specifically, it has been said that "[t]he building was substantially complete when it had reached the stage in its construction when it could have been put to the use for which it was intended even though comparatively minor items remained to be furnished or performed . . .," *State ex rel. Stites v. Goodman, supra* at 766[1].

■ In the instant case the trial court heard testimony that the modules were completed. Yet, the trial court was also presented with evidence that none of the units were completed and that the desks were not usable because they were not stable. S. G. Adams, in seeking to recover, must prove that it had performed in accordance with the terms of the contract. *Miran Investment Company v. Medical West Building Corporation*, 414 S.W.2d 297, 302[1] (Mo.1967); *Gammon v. Armantrout*, 439 S.W.2d 771, 773[4] (Mo.App.1969). Using the test presented in *Duley v. Leininger, supra*, (when confronted with conflicting testimony) we agree the trial court could

have found there was not substantial completion of the contract by S. G. Adams in that the partition units could not have been used for their intended purpose.

The next question presented is whether the trial court erroneously applied the law because it failed to find that Central, by preventing S. G. Adams from completing the installation after the 21st of November, effected a material breach. The plaintiff correctly cites authority in support of the proposition that a party to a contract is to be allowed recovery if the other party forbids performance, *Reid v. Kelly*, 300 S.W.2d 542, 544[2] (Mo.App.1957). Yet, the facts to which the plaintiff contends the law has been erroneously applied could have reasonably been found against the appellant by the trial court.

■ We have detailed how the trial court might have found that S. G. Adams failed to substantially perform within the deadline for performance, i. e. that more than minor, cosmetic defects remained and the partition units were not in condition to be used in the manner in which they were intended. Central had informed S. G. Adams that completion by November 22 was imperative in order to insure the smooth movement of their buying department into the new building. It became evident that the units were not going to be ready for use on Monday morning, when the installation crew left the job Friday afternoon and S. G. Adams was unable to reach the manufacturer to secure the necessary parts. The trial court could have reasonably found S. G. Adams had materially breached the contract. It therefore follows the trial court could have found that S. G. Adams was not entitled to recover from Central. A party to a contract cannot claim its benefits where he is the first to violate it. *Boten v. Brecklein*, 452 S.W.2d 86, 92[2] (Mo.1970); see also, § 400.2–601(a) RSMo.1969.

■ S. G. Adams' third major contention, that it is entitled to incidental damages for the shipping and storage of the partitions, also fails. Incidental damages may be allowed in a proper case. *Weber*

*Motor Car Co. v. Roberts,* 203 Mo.App. 509, 219 S.W. 994, 997[3] (1920); § 400.2–710 RSMo.1969. But if Central had been released from its obligation, because of a material breach by the plaintiff, then no incidental damages arising from S. G. Adams' storage of their own property can accrue. *Boten v. Brecklein, supra.*

Finally, appellant claims that the trial court erred in not granting at least a partial recovery on the contract because the agreement was severable. We need not address ourselves to the question of whether the contract was in fact severable because the trial court could have found that S. G. Adams had failed to fully install *any* of the partition units.

The judgment is affirmed.

GUNN, P. J., and KELLY, J., concur.