527 F.Supp. 602 (1981)
John G. ARIKO, as General Partner for Cedar Point Apartments, Ltd., a Limited Partnership, Plaintiff,
v.
CEDAR POINT INVESTMENT CORPORATION, a Missouri Corporation, and Bill Bruce, individually; and as General Partner in Wellington Green-Cedar Point, Ltd.; and as General Partner in Bruce Properties Company, a Partnership, and Donald Ham, individually; and as General Partner in Wellington Green-Cedar Point, Ltd.; and as a General Partner in Bruce Properties Company, a Partnership, and Donn H. Lipton, individually; and as General Partner of Lipton-Millard II, Ltd.; and as Trustee under Indenture of Trust of Christina Ann Ferer, Grantor, dated December 20, 1971; and as Trustee under Indenture of Trust of Patricia Ferer, Grantor, dated June 13, 1973; and as Trustee of trust created for the benefit of Christina Ferer Millard under terms of Indenture of Trust of Beverly Ferer Katz, Grantor, dated August 27, 1965, as amended November 24, 1973; and as Trustee of trust created for the benefit of Patricia Ferer under terms of Indenture of Trust of Beverly Ferer Katz, Grantor, dated August 27, 1965, as amended November 24, 1973, and Robert B. Millard, individually; and as General Partner of Lipton Millard II, Ltd., and McDonnell Douglas Corporation, a Maryland Corporation, and Christina Ferer Millard, as Trustee under Indenture of Trust of Christina Ann Ferer, Grantor, dated December 20, 1971, and Patricia Ferer, as Trustee under Indenture of Trust of Patricia Ferer, Grantor, dated June 13, 1973, and Gershman Investment Corporation, an Arkansas Corporation, and Community Federal Savings and Loan Association, a Corporation, Defendants.
Anthony J. NICHOLSON, as General Partner for Wellington Green Apartments, Ltd., A Limited Partnership, Plaintiff,
v.
B & D INVESTMENT CORPORATION, a Missouri Corporation, and Bill Bruce, *603 individually; and as General Partner in Wellington Green-Cedar Point, Ltd.; and as General Partner in Bruce Properties Company, a Partnership, and Donald Ham, individually; and as General Partner in Wellington Green-Cedar Point, Ltd.; and as General Partner in Bruce Properties Company, a Partnership, and Donn H. Lipton, individually; and as General Partner of Lipton-Millard II, Ltd.; and as Trustee under Indenture of Trust of Christina Ann Ferer, Grantor, dated December 20, 1971; and as Trustee under Indenture of Trust of Patricia Ferer, Grantor, dated June 13, 1973; and as Trustee of trust created for the benefit of Christina Ferer Millard under terms of Indenture of Trust of Beverly Ferer Katz, Grantor, dated August 27, 1965, as amended November 24, 1973; and as Trustee of trust created for the benefit of Patricia Ferer under terms of Indenture of Trust of Beverly Ferer Katz, Grantor, dated August 27, 1965, as amended November 24, 1973, and Robert B. Millard, individually; and as General Partner of Lipton Millard II, Ltd., and McDonnell Douglas Corporation, a Maryland Corporation, and Christina Ferer Millard, as Trustee under Indenture of Trust of Christina Ann Ferer, Grantor, dated December 20, 1971, and Patricia Ferer, as Trustee under Indenture of Trust of Patricia Ferer, Grantor, dated June 13, 1973, and Missouri Savings Association, a Corporation, Defendants.
Nos. 79-1006C(C), 79-1008C(C).
United States District Court, E. D. Missouri, E. D.
October 30, 1981.
Shostak & Witzel, Burton H. Shostak, Richard C. Witzel, St. Louis, Mo., for plaintiff.
*604 Love, Lacks, McMahon & Schwarz, Chester A. Love, Daniel P. Card, II, Clayton, Mo., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, District Judge.
This matter is before the Court for a decision on the merits after trial to the Court. After consideration of the pleadings, testimony and exhibits introduced at trial, the parties' briefs and the applicable law, the Court makes the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is adopted as such, and conversely, any conclusion of law equally applicable as a finding of fact is so adopted.

Findings of Fact
1. Cedar Point Apartments, Ltd., in Cause No. 79-1006-C(C) is a limited partnership organized and existing under the laws of the state of Florida. The Certificate of Limited Partnership was issued by the Florida Secretary of State on June 13, 1979. John G. Ariko, a citizen of the State of Florida, is its sole general partner and has brought suit herein in such capacity.
2. Wellington Green Apartments, Ltd., in Cause No. 79-1008-C(C), is a limited partnership organized and existing under the laws of the State of Florida. The Certificate of Limited Partnership was issued by the Florida Secretary of State on June 13, 1979. Anthony J. Nicholson, a citizen of the State of Florida, is its sole general partner and has brought suit in such capacity.
3. Defendants Bill L. Bruce, Donald R. Ham, Donn H. Lipton and Patricia Ferer are citizens of the State of Missouri.
4. Defendants Robert M. Millard and Christina Ferer Millard are citizens of the State of New York.
5. Defendants B & D Investment Corporation and Cedar Point Investment Corporation are corporations duly organized and existing under the laws of the State of Missouri. Defendants Donald R. Ham and Bill L. Bruce are and have been since incorporation, the sole shareholders, directors and officers of each corporation.
6. Defendants Bill L. Bruce and Donald R. Ham are, and have been since formation, the sole partners of a partnership organized and existing under the laws of the State of Missouri, to-wit: Bruce Properties Company.
7. Wellington Green-Cedar Point is a limited partnership organized and existing under the laws of the State of Missouri. Its Certificate of Limited Partnership was executed on December 24, 1974 and was recorded with the Recorder of Deeds for St. Louis County, Missouri, on March 19, 1975. Its general partners from the date of organization to present are defendants Bill L. Bruce and Donald R. Ham. From December 24, 1974 to June 13, 1979, its limited partners were Harold B. Huhn and Nannett R. Huhn. On June 13, 1979, an Amended Certificate of Limited Partnership was executed, and from and subsequent to that date, the only limited partner of said partnership has been defendant Donald R. Ham. The amendment to the Certificate of Limited Partnership was filed with the Recorder of Deeds for St. Louis County, Missouri on June 14, 1979.
8. The Certificate of Limited Partnership of Wellington Green-Cedar Point at all times states that:
"The character and purpose of the business of the limited partnership shall be to acquire, own, hold, manage, rent, lease, mortgage, encumber, and otherwise deal with certain parcels of real property, which parcels are hereinafter described, known as WELLINGTON GREEN APARTMENTS and CEDAR POINT APARTMENTS, and to do all other things necessary or incidental to such purposes."
9. Defendant McDonnell Douglas Corporation is and was a corporation duly organized and existing under the laws of the State of Maryland with its principal place of business in the State of Missouri.
*605 10. In Cause No. 79-1008-C(C), defendant Missouri Savings Association was and is a corporation organized and existing by virtue of the laws of the United States with its principal place of business in the State of Missouri.
11. In Cause No. 79-1006-C(C), defendant Gershman Investment Corporation is and was a corporation duly organized and existing by virtue of the laws of the State of Arkansas with its principal place of business in the State of Missouri.
12. In Cause No. 79-1006-C(C), defendant Community Federal Savings and Loan Association was and is a corporation duly organized and existing by virtue of the laws of the United States with its principal place of business in the State of Missouri.
13. From January 11, 1979 to August 10, 1979, defendant B & D Investment Corporation in Cause No. 79-1008-C(C) held record title to the real property known as the Wellington Green Apartments, whose legal description is correctly set forth as follows:
A tract of land in the Southwest ¼ of SECTION 6, TOWNSHIP 46 NORTH, RANGE 7 EAST, and described as follows: Beginning at the Northeast corner of property conveyed to St. Louis County, Missouri by deed recorded in Book 4525 Page 619; thence along the North line of said property, North 89 degrees 29 minutes West, 416.90 feet to the Northwest corner thereof in the East line of Property conveyed to Laura H. Schmitt and husband by deed recorded in Book 503 Page 163; thence along said East line, North 1 degree, 28 minutes East, 168.71 feet to the Northeast corner of said Schmitt property; thence along the North line of said property, North 89 degrees 29 minutes West, 104.3 feet to the Northwest corner thereof; thence North 1 degree 28 minutes East, 1831.40 feet to a Southwestern corner of property conveyed to Orville Behle by deed recorded in Book 3956 Page 464; thence along the Southern line of said Behle property, South 34 degrees 37 minutes East, 649.50 feet and South 64 degrees 22 minutes East, 110.5 feet to the Southeast corner thereof; thence South 0 degree 02 minutes East, 1421.78 to the point of beginning.
On August 10, 1979, by general warranty deed, Defendant B & D Investment Corporation purported to transfer all of its right, title and interest in said real property to the Wellington Green-Cedar Point, a Missouri limited partnership. Said warranty deed was recorded with the Recorder of Deeds for St. Louis County, Missouri on August 14, 1979.
14. From January 11, 1979 to August 10, 1979, defendant Cedar Point Investment Corporation held record title to the real property known as the Cedar Point Apartments, whose legal description is correctly set forth as follows:
A tract of land in U. S. Survey 110, Township 46 North, Range 7 East, and described as follows: Beginning at the intersection of the North line of Chambers Road and the East line of Crown Point Drive, said East line also being the West line of U. S. Survey 110, thence along the East line of Crown Point Drive, North 8 degrees 17 minutes 04 seconds East 1049.78 feet to a point in the center line of creek; thence along the center line of said creek the following courses and distances: South 15 degrees 54 minutes 45 seconds East, 22.23 feet, South 81 degrees 12 minutes East, 49.82 feet, North 82 degrees 47 minutes East 114.25 feet, North 24 degrees 38 minutes East 39.05 feet and South 78 degrees 13 minutes East 74.61 feet to a point in the West line of Pepper Lane Amended Subdivision as per plat book 73 page 36, thence along the West line of said Pepper Lane Amended Subdivision, South 1 degree 05 minutes East, 1045 feet to a point in the North line of Chambers Road, and thence along the North line of Chambers Road, the following courses and distances, North 89 degrees 57 minutes West, 407.01 feet to a point, North 0 degrees 03 minutes East, 5 feet, North 89 degrees 57 minutes West, 10 feet, South 0 degrees 03 minutes West, 5 feet and North 89 degrees 57 minutes West, 12 feet to a point *606 of beginning according to survey by Volz Engineering and Surveying Co. during April 1971, now known as CEDAR POINT, as per plat thereof recorded in Plat Book 139 page 53 of the St. Louis County Records.
On August 10, 1979, by general warranty deed defendant Cedar Point Investment Corporation purported to transfer its right, title and interest in said real property to the Wellington Green-Cedar Point, a Missouri limited partnership. Said warranty deed was recorded with the Recorder of Deeds for St. Louis County, Missouri on August 14, 1979.
15. On August 20, 1979, the plaintiff in Cause No. 79-1006-C(C) filed with Recorder of Deeds for St. Louis County, Missouri, a Notice of Lis Pendens. The Notice of Lis Pendens was recorded with the Recorder of Deeds for St. Louis County, Missouri, and is recorded in Book A-8, page 315-316.
16. On August 20, 1980, the plaintiff in Cause No. 79-1008-C(C) filed with the Recorder of Deeds for St. Louis County, Missouri, a Notice of Lis Pendens. The Notice of Lis Pendens was recorded at Book A-8, page 313-314.
17. On January 12, 1978 Bill L. Bruce entered into an agreement on behalf of Bruce Properties Company with DRG Financial Corporation whereby DRG Financial Corporation would act as agent for Bruce Properties in all phases of application for F.H.A. Mortgage Insurance Commitment and whereby DRG Corporation would also act as F.H.A. approved mortgagee in processing F.H.A. insured loans on the Wellington Green Apartments and Cedar Point Apartments projects.
18. On April 7, 1978 Bill L. Bruce on behalf of Bruce Properties Company entered into two agreements with Thomas L. Barken Investment Company, Inc. and DRG Financial Corporation whereby DRG and Thomas L. Barken Investment Company, Inc. were given the exclusive right to sell, assign, and/or exchange Bruce Properties' interests in the Wellington Green Apartments and Cedar Point Apartments.
19. On January 11, 1979, defendants B & D Investment Corporation and Cedar Point Investment Corporation by their duly authorized officer, defendant Ronald R. Ham entered into contracts for the sale of the Wellington Green Apartments and the Cedar Point Apartments to Anthony J. Nicholson and/or assigns. Prior to January 22, 1979, Anthony J. Nicholson executed the same contracts.
20. Prior to the execution of the final contracts for sale of the Wellington Green and Cedar Point Apartments, there had been preliminary negotiation between the sellers (B & D Investment Corporation and Cedar Point Investment Corporation) by defendants Ham and Bruce and Anthony J. Nicholson and John G. Ariko. These preliminary negotiations commenced in October, 1978, and were conducted through DRG Financial Corporation. In the latter part of 1978, Ham, Bruce, Nicholson and Ariko participated in direct negotiations which had been arranged by DRG Financial Corporation and Thomas L. Barken. At various times during the after contract negotiations, Ham, Bruce, Nicholson and Ariko discussed and agreed that the contracts for the two apartment complexes would be assigned to two Florida limited partnerships to be formed; and that DRG Financial Corporation could act as mortgagee for the purchasers. At that time Anthony J. Nicholson and John G. Ariko personally viewed the properties and were furnished and reviewed various financial documents and records relating to the properties.
21. Paragraph 4 of each contract for sale, specified that the purchaser was to deposit as an earnest money deposit with DRG Financial Corporation the sum of Twenty Thousand Dollars ($20,000.00) for each contract. The earnest money deposit was to be represented by an irrevocable letter of credit in favor of the seller. Further, said earnest money deposit was to be made no later than January 30, 1979.
22. On February 12, 1979, Anthony J. Nicholson tendered two (2) personal checks, No. 2133 and No. 2134, each in the amount of Twenty Thousand Dollars ($20,000.00) to *607 DRG Financial Corporation. Nicholson accompanied his tender with instructions to hold the checks until he gave verbal authorization to cash them. Also on February 12, 1979, Nicholson stated to DRG that he would be offering the sellers a Florida bank letter certifying that the funds for the checks were available upon default. Said checks were never cashed or deposited by DRG Financial Corporation.
23. On March 8, 1979, the Florida National Bank at Orlando issued a letter addressed to Gunner Plake at DRG Financial Corporation whereby the bank stated Nicholson had a line of credit with the bank sufficient in amount to provide for a Forty Thousand Dollar ($40,000.00) advance. The bank agreed to forward Forty Thousand Dollars ($40,000.00) to DRG Financial Corporation from the line of credit of Anthony J. Nicholson upon notice by DRG Financial Corporation to the bank of default by Nicholson under the terms of the sales contracts. In early March, 1979, a representative of Florida National Bank read the letter to Bruce over the telephone. A copy of this bank letter was subsequently delivered to sellers' offices by Thomas Barken, sellers' agent.
24. On May 10, 1979, defendants Cedar Point Investment Corporation and B & D Investment Corporation sent to DRG Financial Corporation a mailgram which stated that they considered the Florida National Bank letter unsatisfactory to meet the requirements of paragraph 4 under the sales contracts, and instructed DRG Financial Corporation to obtain contract compliance.
25. On May 11, 1979 DRG Financial Corporation sent by mail to Anthony J. Nicholson a copy of defendants' May 10th mailgram together with a letter requesting that Nicholson forward to DRG Financial Corporation either a certified check in the amount of Forty Thousand Dollars ($40,000.00) or an irrevocable letter of credit in favor of the sellers by 5:00 p. m. Eastern Daylight time on May 16, 1979.
26. On May 15, 1979, Anthony J. Nicholson sent to DRG Financial Corporation a mailgram in which he protested defendants' request for a Forty Thousand Dollar ($40,000.00) cash deposit on or before May 16 and stated that the Florida bank letter had been accepted by Bill Bruce as complying with the contracts of sale.
27. On May 17, 1979, Anthony J. Nicholson mailed two (2) personal checks, No. 372 and No. 2216, totalling Forty Thousand Dollars ($40,000.00) to DRG Financial Corporation for earnest money deposit on the purchase of the Wellington Green and Cedar Point Apartments. These checks were received by DRG Financial Corporation, subsequently cashed, and the funds were held by DRG Financial Corporation as earnest money deposit up to and until December 5, 1979.
28. Shortly after receiving Nicholson's checks of May 17, 1981, DRG Financial Corporation informed sellers of the receipt of the checks. Sellers' local sales agent, Thomas Barken, informed Donald R. Ham that the funds had been received. Ham then instructed Barken to continue to work toward a closing under the contracts for sale. Sellers also told DRG's Washington agent, Clyde Frame, to proceed to closing under the contract. Sellers were induced and persuaded to proceed with the deal and convey the property to the purchaser Nicholson based upon the representations by Nicholson that closing would occur on or prior to June 14, 1979, the date the commitments to insure were scheduled to expire.
29. A substantial portion of the purchase price provided in each contract was to be funded by notes secured by first deeds of trust. These notes were to be insured by the Federal Housing Administration, pursuant to the provisions of Section 223(f) of the National Housing Act. The balance of the purchase price was to be paid by cash at closing, the earnest money deposit and certain capital surplus notes. Commitments to insure the primary funding were obtained from the Federal Housing Administration and were issued on March 16, 1979. Said commitments, by their terms, expired ninety (90) days after issuance, which was June 14, 1979.
*608 30. On June 8, 1979, DRG Financial Corporation requested the Federal Housing Administration to extend each of said commitments to insure for a period of thirty (30) days. On June 11, 1979 the Federal Housing Authority extended each commitment to insure until July 16, 1979.
31. The extensions to the Federal Housing Administration commitments to insure did not automatically extend the contracts or the time for closing.
32. DRG Financial Corporation, as mortgagee, was to finance the purchase of the properties through the sale of "GNMA" securities. However, the only demand DRG Financial Corporation ever made on sellers to furnish commitments in writing from the present lenders or to authorize the sale of the securities on the open market was by letter dated June 13, 1979.
33. Paragraph 14(b) of each contract for sale provided:
"Settlement or closing hereunder shall be conducted by a person or firm designated by purchaser, such designation to be by notice in writing given seller not less than fifteen (15) days prior to closing hereunder."
The only written notice that sellers received concerning closing was a letter dated June 13, 1979 from David Dempsey, one of purchaser's attorneys, setting closing for June 29, 1979 at the St. Louis HUD office.
34. In order to close the mortgage loans insured by the Federal Housing Administration, the purchaser had a duty to submit numerous documents to the Federal Housing Administration for their review and approval as part of any closing. Said documents included instruments creating the mortgagor entity, deeds of trust, security agreements, a mortgagor's certification as to actual costs, and a financing plan.
35. The purchaser or his representative did not submit all documents to the Federal Housing Administration in sufficient time for the closings to occur on or prior to June 14, 1979. Specifically, the mortgagor's certification as to actual costs and financing plans were not received by FHA until June 18, 1979. In addition, revised notes, deeds of trust, and other documents were not submitted to FHA for its approval until after June 22, 1979.
36. All required FHA repairs on the Cedar Point Apartments had been completed and approved by FHA by June 5, 1979. On June 12, 1979 FHA inspected the repairs on the Wellington Green Apartments and noted in an inspection report that certain interior and exterior items needed completion. The interior items needing completion were minor "punch-type" items. Had the sellers been given notice on or before May 30, 1979 that closing was set for June 14, 1979, the remaining repairs could have been completed except for those exterior repairs for which FHA would have escrowed sufficient funds to cover the cost of completion.
37. The sellers appeared at the F.H.A. offices on the morning of June 14, 1979. At that time they learned that the HUD commitments to insure had been extended at the request of DRG Financial Corporation and that the purchaser had failed to submit all of the required documents to F.H.A. for review. Late in the afternoon on June 14, 1979, after leaving the F.H.A. offices, the sellers notified DRG Financial Corporation by letter that the contracts were terminated in light of the default by purchaser.
38. Neither the purchaser nor a representative of the purchaser appeared for closing on June 29, 1979 at the regional office of the United States Department of Housing and Urban Development in St. Louis as per the previous notification from the purchaser that closing would occur at that date and place. Neither the purchaser nor a representative of the purchaser ever made demand upon the sellers, orally or in writing, that the sellers honor the contracts and convey the property to the purchaser or his assign, either on June 29, 1979 or at some time prior to the expiration of the commitments to insure as they had been extended to July 16, 1979.
39. Had the purchaser or a representative of the purchaser appeared for closing at the time specified on June 29, 1979 and had the purchaser met all of the obligations *609 under the contracts for sale, B & D Investment Corporation and Cedar Point Investment Corporation were prepared to close and convey title to the purchaser or his assigns on that date.
40. Paragraph 28 of each contract for sale provides:
"Purchaser shall have the right to assign this agreement to any partnership of which it is a general partner; provided however, that purchaser shall have such right of assignment only if such assignee or transferee shall in writing expressly assume and agree to perform and discharge each and every obligation and liability of purchaser set forth in this agreement."
On June 8, 1979, Anthony J. Nicholson, as purchaser, executed assignments purporting to convey all of his right and interest in the contracts for sale as purchaser to the plaintiffs, the limited partnerships, respectively. At no time have plaintiffs in writing expressly agreed to assume and perform and discharge the obligations and liabilities of the purchaser. The evidence adduced simply showed that the limited partnerships, as purchasers, under the terms of the partnership agreement were authorized and empowered to assume the obligations and liabilities of the purchaser. Plaintiffs' evidence that they were prepared to agree in writing to assume the obligations and liabilities at closing does not comply with the terms and conditions of the contracts for sale.

Conclusions of Law
1. The Court has jurisdiction over these actions pursuant to 28 U.S.C. § 1332 in that there is total diversity of citizenship between plaintiffs and defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum of Ten Thousand Dollars ($10,000.00).
2. Plaintiffs Cedar Point Apartments, Ltd. and Wellington Green Apartments, Ltd. lack standing to sue on the January 11, 1979 contracts because the assignments of the contracts to them by Anthony J. Nicholson are void. The January 11, 1979 contracts contain express limitations on the power to make assignments. Prohibitions or limitations in a bilateral contract on the right to assign are valid, binding, and enforceable. 6 Am.Jur.2d, Assignments, § 22. Anthony J. Nicholson failed to comply with the assignment clause in the contracts in that he never obtained written agreements from plaintiffs that they would perform each and every obligation of "purchaser" set forth in the contracts. Anthony J. Nicholson further failed to comply with the assignment clause in the contract for Cedar Point Apartments in that he is not a general partner in the Cedar Point Apartments, Ltd. partnership.
Plaintiffs have attempted to avoid these defects in the assignments by arguing that the assignment provisions in the contracts do not apply to them. Their argument is based on the language in the preamble to the contracts which defines "purchaser" as "Anthony J. Nicholson and/or assigns." Plaintiffs assert that they are actually "purchasers" within the meaning of this language and therefore that the assignment stipulations do not govern them. There is no basis for this argument. Reading the contracts as a whole, it is apparent that the assignment provisions were intended to apply equally to all assignees, including those taking directly from Mr. Nicholson as "purchaser."
Plaintiffs further argue that even if the assignment provisions do apply to them, those provisions have lost their effect. Their argument is premised on authority which holds that when assignees have rendered full performance on a contract or when such performance is presently offered, contractual stipulations regarding assignments are no longer binding and may not be invoked by defendants to avoid the contract. This rule was applied by the Eighth Circuit Court of Appeals in Cheney v. Bilby, 74 F. 52, 64 (8th Cir. 1896), cert. denied 164 U.S. 705, 17 S.Ct. 992, 41 L.Ed. 1180 (1896). It appears to be based on the notion that the purpose of assignment restrictions is to safeguard performance on the part of the purchaser, so that once *610 performance has been assured, the restrictions become of no further consequence. See, e.g., Lambert Incorporated v. Starbrand Sales Corp., 422 F.2d 621, 625 (7th Cir. 1970).
The Cheney rule is not applicable to this case. Here, purchaser had repeatedly failed to comply with the terms of the contracts. Therefore, sellers lacked adequate assurance that full performance could be given and were entitled to compliance with the assignment stipulations. Such compliance being absent, the assignments must fail.
Finally, plaintiffs argue that the assignment provisions do not bar these actions because those provisions have been waived by defendants. This contention is without support. The record shows that defendants were aware that assignments were contemplated, but they at no time indicated that such assignments would be permitted without the written assurances provided for in the contract.
3. Assuming, arguendo, that plaintiffs have standing to bring these actions for the purported breach of contracts for sale, plaintiffs nevertheless cannot claim the contracts' benefits. The purchaser, Anthony J. Nicholson, breached the contracts by failing to deposit irrevocable letters of credit in favor of seller with DRG Financial Corporation on or prior to January 30, 1979. Although purchaser ultimately tendered checks as an earnest money deposit, those checks were personal, not certified. Although purchaser submitted a bank letter, that letter did not constitute an irrevocable letter of credit. Purchaser's personal checks and bank letter thus failed to comply with the specific language and terms of the contracts. Sellers bargained for clear guarantees of payment and were entitled to receive them. They did not.
Although sellers did accept purchaser's late tender of personal checks and the bank letter, that acceptance did not constitute a total waiver of purchaser's breach. Sellers specifically conditioned any further agreement to complete the sales and to convey the property to the purchaser or a valid assignee on the fact that closing occur on or prior to June 14, 1979, the then scheduled expiration date of the F.H.A. commitments to insure. Purchaser again failed to comply. Purchaser did not give the notice required by the contract fifteen days in advance of June 14, 1979, nor did purchaser submit the necessary documents to the F.H.A. in sufficient time for the closing to occur on June 14, 1979.
Purchasers have claimed that by obtaining an extension of the F.H.A. firm commitments to insure until July 16, 1979, DRG Financial Corporation, as agent for sellers, extended the contract date and closing date to July 16, 1979. Such an interpretation is not compelled by the language of the contracts. Even if it were, plaintiffs would nonetheless still be precluded from recovery, because purchaser failed to appear for closing on June 29, 1979, the date set by its attorney, and failed to make demand upon sellers that they close prior to the time the F.H.A. commitments, as extended, expired on July 16, 1979.
The law is well settled that a party to a contract cannot claim its benefits where he is the first to violate its terms. S. G. Adams Printing and Stationery Company v. Central Hardware Company, 572 S.W.2d 625 (Mo.App.1978), Navato v. Sletten, 560 F.2d 340 (8th Cir. 1977). Because purchaser was the first to violate these contracts, judgment must be entered against the plaintiffs on their claims for damages under the contracts and for specific performance.
4. Likewise, judgment must be rendered against plaintiffs on their claims for tortious contractual interference and civil conspiracy. Where a party has breached a contract, the contract is void with regard to the other parties to it. Accordingly, no action for tortious interference or conspiracy will lie with respect to that contract. See, e.g., McNamar v. Baltimore & Ohio Chicago Terminal R. Co., 254 F.2d 717 (7th 1958); Restatement (Second) of Torts, § 766, Comment P.
5. Because judgment is being rendered against plaintiffs on the above claims, it is *611 unnecessary for this Court to address the validity of plaintiffs' lis pendens notices.