**LIEBERMAN CORPORATION, d/b/a Lieberman Realty Company, Plaintiff–Respondent,**

v.

**Norman L. JEZEWAK and Donna Jezewak, Defendants–Appellants.**

**No. 55479.**

Missouri Court of Appeals, Eastern District, Division Two.

July 18, 1989.

Steinberg, Crotzer and Garland, Michael David Alter, St. Louis, for defendants-appellants.

Susman, Schermer, Rimmel & Shifrin, Thomas R. Schlesinger, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

This appeal involves a judgment in favor of Lieberman Corporation for a real estate commission on the sale by Norman L. Jezewak and Donna Jezewak, his wife, of a condominium owned by the Jezewaks. The trial court found from the evidence the Jezewaks agreed to sell their condominium to a purchaser during the period they

agreed to pay a real estate commission if a "willing and able purchaser is procured by the undersigned REALTOR, or by us...." There is no dispute the purchaser was procured by Jezewaks. The defense was the contract expired before the purchaser was procured. No findings of fact were requested or made. The judgment in favor of Lieberman depends upon a finding that Jezewaks breached the listing contract. The sole issue on appeal is whether there was substantial evidence to support a finding that they did. Both parties offered evidence in support of their position. In this court tried case the trial court found in favor of Lieberman and awarded a judgment for a real estate commission. We affirm.

We review this appeal from a judgment in a court tried case according to Rule 73.01(c) as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in the light most favorable to Lieberman, the prevailing party. *Morrison v. Jack Simpson Contractor, Inc.*, 748 S.W.2d 716, 718 (Mo.App. 1988). We consider all fact issues were found in accordance with the result reached. *Id.* We must accept as true the evidence and permissible inferences therefrom and disregard contrary evidence. *Duley v. Leininger*, 527 S.W.2d 456, 458 (Mo.App.1975). Further, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Within the constraint of these principles the record discloses the following evidence available to the trial court in support of Lieberman's claim.

Monte Turner, agent for Lieberman, prepared a uniform listing contract on September 4, 1984. The provisions of the contract supporting Lieberman's claim and relevant to the issue of appeal are:

If within 6 months after the date of this listing, a ready, willing and able purchaser is procured by the undersigned REALTOR, or by us, or by any other person, or if said property shall be contracted by us to be sold to, leased to, or exchanged with any person procured by the undersigned REALTOR, or by us, or by any other person ...

* * * * * *

By his signature hereto, the Owner acknowledges that he has read and approved the information on the reverse side regarding the above addressed property, and that he authorizes the undersigned REALTOR to rely upon said information in advertising and promoting the property.

* * * * * *

[On reverse side appears]
ADDRESS
AD: :7:4:0: :F:A:I:R:F:I:E:L:D: :L:A:K:E: :D:R:

* * * * * *

LIST DATE
LD: :S:E:/:0:6:/:8:4: [September 6, 1984]

Turner gave the following testimony in support of Lieberman. He prepared the listing contract on September 4, 1984. He completed the information on both the front and back, including the express listing date of September 6, 1984. The contract granted an exclusive listing for six months. Accordingly, it expired, by its terms, on March 6, 1985. The preparation date of September 4, 1984, appears at the top the contract. September 4, 1984, was a Tuesday. Turner testified he prepared and signed the contract on that day. He gave the contract to Norman Jezewak because Norman told him Donna Jezewak was out of town and he would take the contract, obtain her signature and return the signed contract. It was for that reason the list date of September 6th was noted on the reverse side. The executed contract was returned to Turner by Norman Jezewak on the following weekend and subsequently signed by the President of Lieberman Corporation d/b/a Lieberman Realty Company on Monday, September 10, 1984.

The Lieberman Corporation undertook to find a purchaser. They expended time and money in advertising and showing the property. They never located a purchaser who was ready, willing and able to purchase the condominium.

Turner testified that on March 6, 1985, he received a phone call from a friend who was a real estate agent for another compa-

ny. During the conversation she congratulated Turner for the sale of the Jezewak condominium. The agent, also a witness for Lieberman during the trial, informed Turner that the former wife of Nat Dubman told her that Mr. Dubman had purchased Jezewaks' condominium. This testimony, if believed by the trial court, supported Lieberman's theory that the Jezewaks procured a purchaser within six months of September 6, 1984, by at least March 6, 1985.

Lieberman also offered testimony of employees of Commonwealth Land Title Company. They testified Norman Jezewak placed an order with Commonwealth for a commitment for title insurance for Dubman as the purchaser of the condominium for an agreed price of $360,000. Commonwealth was told the price and was requested to complete its work by March 17, 1985, anticipating a closing of April 1, 1985. They also were told there had been an earnest deposit given to Norman Jezewak in the amount of $10,000. In regard to this transaction Norman Jezewak met with an employee of Commonwealth Title on March 6, 1985. The Commonwealth order form noted the customer was Norman Jezewak. He was known by employees of Commonwealth to be knowledgeable in real estate matters. The requested effective date for the title insurance policy was February 19, 1985, naming Dubman as the proposed insured.

An exhibit offered by Lieberman, the order form of Commonwealth Land Title Insurance Company, bears the date March 6, 1985. However, another exhibit, a commitment for title insurance issued by Commonwealth Land Title Insurance Company, states an effective date of February 19, 1985, and lists the proposed insured as Nat Dubman.

Lieberman offered an exhibit, a general sale contract which bears the date March 6, 1985, and the signatures of Donna M. Jezewak and Norman L. Jezewak. In this contract the Jezewaks agreed to sell to Nat Dubman the condominium for $360,000, $10,000 earnest money and $350,000 cash on closing. On March 7, 1985, Dubman gave a personal check to Jezewaks in the amount of $10,000. There is a second general sale contract in evidence, dated April 8, 1985. The second contract is substantially the same as the first, but the place of closing was changed from Commonwealth Land Title Company to Lawyers Title Insurance Company and the closing date changed from April 1, 1985, to April 15, 1985. The second contract was executed by both Jezewaks and Dubman. Ultimately, the property was closed at Lawyers Title Insurance Company for the agreed price and conveyed to Dubman.

Lieberman relies upon the above direct evidence that the Jezewaks procured a purchaser, Dubman, by March 6, 1985. In addition, there was some indirect evidence in support of Lieberman's theory. Although Dubman testified for the defense that he first saw the Jezewak condominium on March 7, 1985, and spontaneously agreed on that date to purchase, Turner testified that he met Dubman on March 5, 1985, at a sales office near the Jezewak condominium. In connection with that event Turner testified:

Well, March 5th, was the first time I saw him [Dubman]. And it was only curious that he wasn't parked in the customer parking lot across the street from me. He was parked in front of the Jezewak's [sic] home at # 740 Fairfield Drive.

The parking lot was empty, but I didn't think much of it, you know, that someone pulled out and walked around. Because there is a sign there.

The second time I saw him was on March 6th, 1985, after all this transpired. After my conversation with Karen Birkel [friend of Mrs. Dubman, who informed Turner on March 6, 1985, that the Jezewak condominium had been sold] I went to the office to gather some papers that morning and Mr. Dubman—his car was parked in the driveway, and as I pulled in he was getting ready to leave. And at that time when he saw me he immediately walked back in the garage and stood behind one of the automobiles and waited until I entered my office.

This testimony constituted evidence from which the trial court could infer Dubman attempted to evade Turner in order to assist Jezewaks in avoiding their obligation under the listing contract.

The property was listed at $415,000 and sold for $360,000. The $415,000 figure was a gross price subject to commission. The Jezewaks were obligated under the contract to pay a commission of six and one-half percent of an agreed sale price if a ready, willing and able purchaser was procured within the term of the contract. The actions of Dubman on March 6, 1985, infer knowledge that an effort was being made to avoid an obligation to pay the commission which may upset the expectation of Jezewaks to have a net recovery of $360,000 from the sale and prevent the sale.

We find the direct and indirect evidence sufficient to support the judgment of the trial court in favor of Jezewaks based upon a finding that: (1) the duration of the contract extended from September 6, 1984, through March 6, 1985; (2) the Jezewaks procured a purchaser, Dubman, no later than March 6, 1985; and, (3) the failure of the Jezewaks to pay Lieberman the agreed commission under the terms of the contract constituted a breach of the agreement. Credibility was for the trial court and it apparently did not believe the testimony of either Norman Jezewak, Donna Jezewak or Dubman that they became seller and purchaser no earlier than March 7, 1985. Interpretation and compliance with the listing contract are questions of fact for the trial court to decide. *Ham v. Morris*, 711 S.W.2d 187, 190 (Mo. banc 1986).

The trial court found a purchaser was procured by the Jezewaks during the period of the contract. In support of the finding the listing contract began on September 6, 1984, and terminated on March 6, 1985, the trial court had the benefit of the testimony of Turner that the listing date was September 6, 1984, not the preparation date of September 4, 1984. He testified the express date for the beginning of the listing appeared on the reverse side of the contract. The six month period began "after the date of this listing" and the listing date was owner "approved" on the face page of the contract. In interpreting the contract the trial court was entitled to find there was an express listing date which was either directly a part of the contract or incorporated by reference by reason of the approval provisions. Matters incorporated into a contract by reference are as much a part of the contract as written into the contract. *Three–0–Three Investments, Inc. v. Moffitt*, 622 S.W.2d 736, 738 (Mo. App.1981).

The judgment of the trial court is supported by substantial evidence. The judgment does not depend upon any erroneous declaration or application of law. We affirm.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.