STATE of Missouri, Respondent,

v.

Clay Jason WALLACE, Appellant.

No. 58603.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Feb. 18, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 24, 1992.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Alan J. Koshner, St. Louis, for appellant.

SIMON, Judge.

Appellant Clay Jason Wallace, appeals his convictions by a jury of possession of more than 35 grams of marijuana (Count I), § 195.020 RSMo 1986 (repealed; current version at § 195.202 effective August 1990), possessing cocaine (Count II), § 195.-020 RSMo 1986 (repealed; current version at § 195.202 effective August 1990), resisting arrest (Count III), § 575.150 RSMo 1986, two counts of possessing a short-barrel shotgun (Counts IV and V), § 571.-020 RSMo 1986, and selling cocaine (Count VI), § 195.020 RSMo 1986 (repealed; current version at § 195.211 effective August 1990) (all further references shall be to RSMo 1986 unless otherwise noted). Appellant was sentenced to pay fines and serve consecutive terms of imprisonment as follows: confinement for a period of three years and a fine of one thousand dollars under Count I; two years and a fine of two thousand dollars under Count II; a fine of two thousand dollars under Count III; a fine of five hundred dollars for each of Counts IV and V; and five years under Count VI. Appellant was sentenced to a total of ten years' imprisonment and fined a total of six thousand dollars.

On appeal, appellant alleges that the trial court erred in: (1) allowing the state to introduce evidence illegally seized in a warrantless search of appellant's residence to prove the corpus of the crimes for felony possession of marijuana, possession of cocaine and possession of two short-barreled shotguns; (2) allowing the state to introduce hearsay evidence that appellant allegedly delivered a narcotic controlled substance to a confidential informant when said "percipient witness" was not produced at trial for cross-examination purposes by defense counsel, in violation of appellant's confrontational rights under the state and federal constitution; (3) failing to grant appellant's motion for new trial because of improper argument and mischaracterization by the state of its evidence during closing argument; (4) allowing the jury to consider whether appellant resisted arrest without the corpus of said crime established by the state; and (5) refusing to give appellant's tendered jury instructions for the reason that they were not inconsistent with pattern instructions as found in MAI-CR3d. We affirm in part and reverse and remand in part.

The facts, viewed in the light most favorable to the verdict, are as follows. On July 27, 1989, Officer Robert Kindred of the Troy Police Department, assigned as a special deputy sheriff for Lincoln County, and Chief Deputy sheriff Mick Harding met with Joe Morton, a confidential informant. Morton had previously informed police that appellant was selling cocaine. Harding and Kindred met with Morton at 4:30 p.m. at the Cuivre River State Park to set up a drug buy.

The officers searched both Morton and his car for money and drugs and none was found. Morton was then given fifty dollars to buy drugs from appellant. Kindred and Harding followed Morton to appellant's home. Morton met with appellant and

gave him the money in exchange for a bag containing a white substance, later identified as cocaine. Kindred and Harding observed the transaction from a side street where they were parked approximately 100—120 yards away. Kindred had the aid of binoculars.

Morton left appellant's home and met Kindred and Harding at a previously designated point. Kindred took possession of the cocaine bought from appellant and both Morton and his car were again searched and nothing was found. Kindred and Harding then tried to contact other officers to apply for a search warrant for appellant's home.

Officers Brodt and Chidster began surveillance of junk vehicles located in back of appellant's home around 5:00 p.m. Appellant pulled up in his Grand Prix and walked towards a junked, gold Maverick, and opened the trunk. He lifted his head and looked around, then directed his attention back to the trunk. When appellant closed the trunk he was carrying a plastic bag containing a brown, leafy substance later identified as marijuana. Appellant then began walking away from the Maverick and towards Officers Brodt and Chidster.

Brodt attempted to arrest appellant but appellant looked at Brodt and took off running. Brodt yelled "Police! Halt!" and began chasing appellant. As appellant was running away, he was emptying the plastic bag by throwing the leafy substance on the ground. Appellant also removed small packets containing a white substance from his waist ripping them open and throwing them down. Brodt lost appellant in the woods and he and Chidster began gathering the leafy substance appellant had thrown on the ground. Brodt went to appellant's home while Chidster remained with the cars.

As Officers Kindred and Harding were returning to the sheriff's office they heard Chidster's radio call and returned to appellant's home. Officer Roth had already been dispatched to the home. When Kindred arrived he asked appellant's father if there were any firearms in the house and appellant's father indicated there were.

Appellant's father then led Kindred to appellant's bedroom so the guns could be secured for safety purposes. The guns were checked, unloaded, and then laid on the couch.

Officers Brodt, Harding, and Kindred went to apply for search warrants. Upon returning to the home with the search warrants the entire house was searched. Kindred and Roth searched appellant's room finding two short-barrel shotguns, marijuana, cocaine, and drug paraphernalia. Officers Brodt, Harding and Chidster searched the cars in the backyard. Nothing was found in the Grand Prix but some marijuana, traces of cocaine, and a piece of paper stating "minus one (1) ounce light" were found in the Maverick.

■ In his first point, which contains five subpoints, appellant alleges that the trial court erred in allowing the state to introduce evidence illegally seized in a warrantless search of appellant's residence to prove possession of marijuana, cocaine, and two short-barreled shotguns. Although appellant argues this was a warrantless search, we note that a search warrant was issued for the residence but appellant appears to be arguing that the warrant was invalid thereby rendering the search warrantless. At the outset, we note that appellant has failed to state wherein and why the trial court erred in his point relied on. Rule 30.06(d). Additionally, he failed to preserve each of the five subpoints due to the fact that they were not contained in his Point Relied On. *State v. Carey*, 808 S.W.2d 861, 866[11, 12] (Mo.App.1991). We therefore review for plain error and determine if manifest injustice has occurred.

In his first subpoint, appellant argues that the search warrant was invalid in that it did not comply with the statutory requirements set forth in §§ 542.276, 542.291, and 542.296. Appellant contends that Officer Kindred's statement does not comply with § 542.276 because it is not signed, dated, and notarized. Further, he argues that Kindred's statement is fatally defective on its face because it did not disclose the identity of the confidential informant.

Initially, we note that the record on appeal contains unsigned applications for search warrants (complaints), a signed affidavit by Officer Brodt concerning the vehicles, an unsigned statement by Officer Kindred concerning the residence, signed search warrants for both the residence and the vehicles and signed return and inventory sheets for both the residence and the vehicle. The record on appeal does not indicate if any of these documents are from the court file which the trial court mentioned at the suppression hearing or the exhibits at the suppression hearing.

Examining the record, we find that the procedural aspects of issuing the warrant are mentioned only at the suppression hearing. At the suppression hearing the testimony was as follows:

Q [Prosecutor] I'll show you what's been marked for identification as State's Exhibits No. 1 and 2, and ask you if you can identify those.

A (By Officer Kindred) Yes, sir.

Q And what are they?

A They're complaints for search warrants.

Q And are these originals or are they photocopies?

A Appear to be photocopies.

Q And who was the complainant in both of these complaints?

A Me.

Q Are these the duplicates of the complaints for search warrants that you procured that evening?

A Yes.

Q Now, these have no signatures or copies of signatures; is that correct?

A That is correct.

Q Except for the signatures, do they fairly and accurately represent the actual complaints for search warrants that is filed with that Court right now?

A Yes, sir.

PROSECUTOR: I would offer State's Exhibits 1 and 2, Your Honor.

DEFENSE COUNSEL: Your Honor, we're going to object, because the Court should have its own file on that, and should be the best evidence, not the photocopies.

THE COURT: I will overrule the objection. If that's in the file, I'll see it there. If it isn't, these will do.

Q [Prosecutor] After completing the complaints for search warrants, what, if anything, did you do?

A We went to Ellsbury, where the Judge issued the search warrant.

Q Okay.
(State's Exhibits 3 and 4 are marked for identification, by the Clerk.)

Q [Prosecutor] I'll show you what's been marked as State's Exhibits 3 and 4, and ask if you can identify those. (Pause.)

A These are copies of the search warrants.

Q And these, also, are photocopies?

A I believe so, yes, sir.

Q And do the copies reflect a signature on the bottom?

A Yes, sir.

Q Have you had occasion to get search warrants or deal with correspondence in the past?

A Yes, sir.

Q Do you recognize the signature on the bottom of that?

A Yes, sir.

Q Whose signature is that?

A Judge Kathy Douglas.

Q All right.

PROSECUTOR: I would offer State's Exhibits 3 and 4 as the actual search warrants.

THE COURT: They will be received.

Additionally, the record indicates that appellant has failed to preserve this subpoint for review. Here the motion to suppress evidence was denied and appellant failed to object at trial to the admission of the evidence. *State v. Rayford*, 611 S.W.2d 377, 378[1] (Mo.App.1981).

Since appellant failed to object as to the statutory requirements at the suppression hearing and at trial and has apparently failed to include in the legal file the warrant applications in the court file as mentioned in the suppression hearing, we must assume that the warrant applications and

their accompanying documents were properly executed. The signed search warrants are in the legal file; we must assume the trial judge would not have granted the warrants if the applications were not in proper form. In any event, based on the necessary implications drawn from the suppression hearing response by the judge and the lack of a further objection, we find no manifest injustice.

■ There is no requirement that a confidential informant's identity be disclosed in the affidavit. Additionally, it is not necessary for the officers to submit an affidavit of the confidential informant in order to establish probable cause. Here, the affidavit was based mainly on Officer Kindred's personal observations of the transaction between appellant and confidential informant. Thus, an affidavit by the informant was not necessary to establish probable cause.

■ In his second subpoint, appellant contends that the warrants are constitutionally defective because they do not authorize the seizure of firearms thereby barring the seizure of any firearms at appellant's residence from being introduced into evidence. Appellant has failed to preserve this subpoint for appeal in that his objections at trial were grounded on reasons different than his reason stated here. *State v. Reynolds*, 782 S.W.2d 793, 795[2] (Mo.App.1989). Nevertheless, items discovered in a search pursuant to a valid warrant may be seized if: (1) they are observed in plain view while the police officer is in a place where he has the right to be; (2) discovery is inadvertent; and (3) it is apparent to the officer that he has evidence before him. *State v. Clay*, 763 S.W.2d 265, 269[4, 5] (Mo.App.1988). We note that the second requirement, inadvertence, is no longer a necessary precondition to a plain view seizure. *State v. Collins*, 816 S.W.2d 257, 261[7] (Mo.App.1991).

Here, the officers had a right to be in appellant's bedroom pursuant to the valid search warrant for the house. The officers discovered the two short-barreled shotguns while searching a chest of drawers where cocaine and drug paraphernalia would rea-

sonably be hidden. Upon finding these shotguns the officers seized them as illegal firearms. The fact that the shotguns were not specifically mentioned in the search warrant does not bar their seizure by police officers or their introduction into evidence.

■ Appellant's third subpoint is that the trial court erred in retroactively validating an illegal search and seizure of certain items on the Wallace property by failing to grant appellant's motion to quash the search warrant and to suppress evidence. Appellant supports this contention by reciting summations of testimony given by defense witnesses at trial. Again, we find that appellant has failed to preserve this claim for review. *State v. Rayford*, 611 S.W.2d 377, 378[1] (Mo.App.1981). Here, appellant either did not object when such evidence was offered at trial or the objection made was based on reasons other than those raised on appeal. Further, the essence of this contention is repetitious and cumulative of those previously addressed.

■ In his fourth subpoint, appellant argues that the state failed to meet its burden of showing that he knowingly and intentionally possessed a controlled substance. Appellant argues that he cannot be deemed as having been in possession of any controlled substances merely because he was in close proximity to an abandoned automobile on his father's property, he knew other persons, and was present on the premises where those persons resided at the time of his arrest. Further, appellant argues that since no controlled substances were found on his person, or in his automobile that the facts as stated in the formal charges against him are insufficient as a matter of law to sustain a conviction. The role of this court is not to weigh the evidence, but to ascertain whether there was sufficient evidence at trial so that a reasonable person could conclude that the defendant is guilty. *State v. Vitale*, 801 S.W.2d 451, 456[13, 14] (Mo.App.1990). In determining the sufficiency of the evidence to support a conviction, "all evidence tending to support the verdict must be considered as true, contrary evidence disregarded, and every reasonable inference

supporting the verdict indulged." *State v. Wahby,* 775 S.W.2d 147, 154[16, 17] (Mo. banc 1989).

At trial there was testimony by officers: 1) concerning a drug sale by appellant; 2) as to their observations concerning appellant's storage and removal of controlled substances from an abandoned vehicle and appellant's discarding of controlled substances by throwing it on the ground during flight; and 3) concerning evidence seized pursuant to a search warrant. Viewed in the light most favorable to the verdict, we find that a reasonable person could conclude that the defendant knowingly and intelligently possessed the marijuana and cocaine.

In his final subpoint, appellant claims that the trial court erred as a matter of law in overruling his objections to Officer Kindred's testimony for the reason that the officer was not qualified since he had no specific police training in the identification and test firing of firearms, or extensive experience as a police officer in any type of laboratory work involving ballistics. Appellant argues that the state failed to lay an adequate foundation for the admission of short-barreled shotguns under § 571.-010(2), (5), (15) because the shotguns were not shown to be fully operational. Appellant further argues that the state failed to show that said shotguns belonged to him due to Officer Kindred's failure to take fingerprints or serial numbers.

■ As used in § 571.020, "short barrel" means a barrel length of less than eighteen inches for a shotgun, measured from the face of the bolt or standing breech, or an overall shotgun length of less than twenty-six inches. Further, "shotgun" is defined as any firearm designed or adapted to be fired from the shoulder and to use the energy of the explosive in a fixed shotgun shell to fire a number of shots or a single projectile through a smooth bore barrel by a single function of the trigger. § 571.-010(15). Additionally, § 571.020(2)(5) provides that,

2. A person does not commit a crime under this section if his conduct:

.   .   .   .   .

(5) Was incident to dealing with the weapon solely as a curio, ornament, or keepsake, or to using it in a manner reasonably related to a lawful dramatic performance; but if the weapon is a type described in subdivision (1), (3), or (5) of subsection 1 of this section it must be in such a nonfunctioning condition that it cannot readily be made operable. No short barreled rifle, short barreled shotgun, or machine gun may be possessed, manufactured, transported, repaired or sold as a curio, ornament, or keepsake, unless such person is an importer, manufacturer, dealer, or collector licensed by the Secretary of Treasury pursuant to the Gun Control Act of 1968, U.S.C., Title 18, or unless such firearm is an "antique firearm" as defined in subsection 3 of section 571.080, or unless such firearm has been designated a "collectors item" by the Secretary of the Treasury pursuant to the U.S.C., Title 26, Section 5845(a).

We find that the short barreled shotguns do not fall within subdivision (1), (3) or (5) of subsection 1 of this section. Additionally, we find no requirement in the statute that the shotguns be fully operational.

■ The testimony at trial indicated that both shotguns were taken from a chest of drawers in appellant's bedroom. Kindred testified that he "specifically asked which room was Clay's room and Clay's father pointed out the northwest bedroom again." That was the same bedroom that he had retrieved the long guns from prior to the search. The shotguns were found in a chest of drawers along with controlled substances. Thus, the trial court did not err in allowing the shotguns to be admitted into evidence without fingerprint or serial number evidence.

■ In his second point, appellant argues that the trial court erred in allowing the state to introduce hearsay evidence that appellant allegedly delivered a narcotic controlled substance to a confidential informant when said "percipient witness" was

not produced at trial for cross-examination purposes by defense counsel in violation of his constitutional rights. Upon review of the record, we find no hearsay objections made to any of the testimony given by Officers Kindred and Brodt concerning their meetings with Joe Morton, the confidential informant. Thus, the point is not preserved. Inadmissible hearsay which goes in the record without objection may be considered by the jury. *State v. Lewis*, 735 S.W.2d 183, 188[11, 12] (Mo.App.1987). We find no manifest injustice.

Appellant raises several other claims in the argument section of his second point pertaining primarily to Joe Morton and his availability, however, those claims are not raised in his point on appeal and therefore have not been preserved for review. We have reviewed the claims and find no plain error on behalf of the trial court.

■ In his third point, appellant argues that he was prejudiced because the Prosecuting Attorney, in his closing argument, misstated his authority under the law by implying to the jury he has a superseding authority to bar appellant from confronting Joe Morton or any other state witness from scrutiny by appellant under cross-examination as guaranteed by the Missouri and Federal constitutions. Appellant further argues that the prosecutor misstated and mischaracterized the evidence in his rebuttal argument.

The portion of the state's closing argument that appellant claims was prejudicial is as follows:

First of all, let me say that no one witness chooses to testify or not to testify. As a representative of the state in this particular case I make that decision. I choose whether or not a witness testifies or does not testify, and I would ask you to take that into consideration when you are back there deliberating as to who did testify and did not.

Appellant did not object to this portion of the argument at trial. Since this issue was not properly preserved, our review is limited to plain error. When reviewing for plain error, improper argument does not justify relief unless appellant has shown

that it had a decisive effect on the jury. *State v. Childers*, 801 S.W.2d 442, 444[3, 4] (Mo.App.1990). Appellant has failed to show nor do we find that the prosecutor's statements had a decisive effect on the jury.

■ Appellant's second contention is that the prosecutor misstated and mischaracterized the evidence in his rebuttal argument. Appellant directs us to the following portion of the argument:

Prosecutor: [Appellant's counsel] mischaracterized evidence. The evidence wasn't even closed [sic] to Tom Wallace saying that these things were taken out of the drawer by Kindred before the warrants got there. He said that he thought they were in the group of weapons that were taken out. That was it. You heard the evidence.

[Appellant's counsel]: Objection, your Honor. The state's mischaracterizing the testimony. That was Deputy Johnson that made that statement this morning.

Appellant's objection was sustained, but he failed to request further relief. Therefore, the corrective action taken by the trial court was adequate. *State v. Corpier*, 793 S.W.2d 430, 444[44] (Mo.App.1990).

■ Appellant, in his fourth point, argues that the trial court erred in allowing the jury to consider whether he resisted arrest without the corpus of said crime properly pled and established by the state. Essentially, appellant contends that the state did not present sufficient evidence at trial to warrant a conviction for resisting arrest. We disagree but reviewing the record we find a problem with the information, the instructions submitted, and the sentence imposed for the charge of resisting arrest. Although this issue was not raised on appeal, it is jurisdictional and we review it sua sponte.

■ Section 575.150(1)(1) provides that a person commits the crime of resisting arrest if, "knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, he: (1) resists the arrest by . . .

fleeing from such officer." Section 575.-150(4) provides "Resisting, by means other than flight, or interfering with an arrest for a felony is a class D felony; otherwise, resisting or interfering with arrest is a class A misdemeanor." Appellant was charged in the information with the class D Felony of Resisting Arrest by "fleeing from the officer." Further, the verdict director and verdict form submitted to the jury listed the range of punishment for the class D felony of resisting arrest. There is no indication in the record that a confrontation took place between appellant and the officer prior to appellant's flight. Examining the language of the statute it is clear that resisting arrest by flight is a class A misdemeanor. We find that appellant was charged and sentenced improperly and that this count must be reversed and remanded.

■ Appellant, in his final point, alleges that the court erred in refusing to give his tendered jury instructions from Devitt & Blackmar concerning the burden of proof, expert testimony, the number of witnesses, and an informant's testimony. Appellant argues that the instructions were not inconsistent with pattern instructions as found in MAI–CR3d. That may be true but whenever there is an applicable MAI–CR instruction, it shall be given to the exclusion of any other instruction. Rule 28.-02(c). The trial court did not err in submitting MAI–CR patterned instructions and rejecting appellant's tendered instructions.

We conclude that the trial court did not err as to appellant's first, second, third and fifth points on appeal. However, we find error as to the resisting arrest charge.

Judgment affirmed in part and reversed and remanded in part.

SMITH and AHRENS, JJ., concur.