Patricia Sue Bryce CALLIS, Respondent,

v.

James H. BRYCE, Appellant.

No. WD 47509.

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1994.

Application to Transfer Denied
April 26, 1994.

Cynthia A. Suter, Kyser and Suter, Moberly, for appellant.

Clifford A. Falzone, Moberly, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and ELLIS, JJ.

ULRICH, Presiding Judge.

James H. Bryce appeals the order of the trial court finding him in contempt and ordering his commitment for his failure to comply with the decree of dissolution requiring him to pay Patricia Sue Bryce Callis the sum of $45,011.33. Mr. Bryce also appeals the order of the trial court granting attorney's fees to Mrs. Callis for this appeal.

The judgment is reversed.

James H. Bryce and Patricia Sue Bryce (Mrs. Callis) were married May 7, 1970. On March 14, 1988, a petition for dissolution of marriage was filed. The parties signed and filed a settlement agreement (agreement) and a waiver of summons. Mr. Bryce was not represented by counsel during the dissolution. The marriage between the parties was dissolved on April 20, 1988, and the agreement was incorporated as a part of the decree of dissolution.

The agreement provided that Mr. Bryce would assume and pay, among other debts, two promissory notes payable to the Commerce Bank of Moberly (Bank). The first promissory note was secured by a deed of trust which created a lien on the marital residence, a home in Moberly. The second note to Bank was secured by a lien on a Buick Riviera. The agreement provided that Mr. Bryce would assume and pay these debts "in lieu of support and maintenance and [the obligations are] not dischargeable in bankruptcy." The agreement also provided that if Mr. Bryce had not assumed these obligations "the support and maintenance, or either one, would not be in the same amount as herein provided."

Additionally, the agreement between the parties provided that the court would enter judgment in favor of Mrs. Callis and against Mr. Bryce for support and maintenance in the amount of $11,000 payable at the rate of $150 a week for four weeks and the sum of $100 a week for two years.

On August 29, 1988, Mr. Bryce filed his petition in bankruptcy in the United States Bankruptcy Court for the Western District of Missouri seeking discharge of all debts, including any and all debts owed to Mrs. Callis and to the Bank. Mr. Bryce later reaffirmed the debts owed the Bank. Mrs. Callis filed a claim in the Bankruptcy Court for all indebtedness which was to have been paid to her pursuant to the decree of dissolution.

Mr. Bryce's debts were discharged by the Bankruptcy Court on May 23, 1989. On September 6, 1991, the trustee in bankruptcy attempted to pay Mrs. Callis $1,595.29 as full satisfaction for her claim of $57,561.64. The check was never cashed. On June 25, 1992, the trustee in bankruptcy was authorized by the Bankruptcy Court to transfer the funds, representing the uncashed check made payable to Mrs. Callis, into the registry of the court.

On December 29, 1989, Mrs. Callis married Mr. Callis. Mr. Bryce paid Mrs. Callis the weekly payments required by the decree until December 29, 1989. Mr. Bryce continued to pay the debts on the automobile and the house to the Bank until December 1990. When Mr. Bryce stopped making payments to the Bank on the two notes, Mr. Callis paid the Bank the balance of the debt owed on the automobile on December 4, 1990. On August 30, 1990, Mrs. Callis sold the real property constituting the security for the first note owed the Bank, and the Bank was paid $31,835.36, the balance of the debt owed the Bank on the note.

On February 25, 1991, Mrs. Callis filed her motion for contempt, alleging that Mr. Bryce was without just cause and in contempt of court by failing to pay monthly maintenance to her and payments to the Bank as required by the decree. The court issued its show cause order, and the court ordered Mr. Bryce to appear on April 3, 1991, to show cause why he should not be found in contempt of court.

On March 5, 1992, Mr. Bryce filed an application in the Bankruptcy Court to stay the state court proceedings, contending that he had been discharged from all debts owed Mrs. Callis by virtue of the Bankruptcy Court's order of discharge filed in 1989. Mrs. Callis filed a response in the Bankruptcy Court to Mr. Bryce's application asserting

that the debts owed by Mr. Bryce to her were not dischargeable because they were in lieu of support and maintenance. On June 3, 1992, the Bankruptcy Court abstained from hearing the issues raised, stating that the matter was properly before the state court.

On December 17, 1992, the contempt proceedings were tried. The trial court issued its order on February 10, 1992, finding Mr. Bryce in contempt of court and ordering Mr. Bryce's commitment to the Sheriff of Randolph County until such time as he purged himself of his contempt by paying to the registry of the court in behalf of Mrs. Callis the sum of $45,011.33 and the costs of the action. The court found that the maintenance payments were properly terminated by Mrs. Callis' remarriage. The court also found in its judgment that Mr. Bryce's obligation to pay the indebtedness on the house and the car was in the nature of a division of property and continued beyond Mrs. Callis' remarriage. The court further found Mr. Bryce had the ability to discharge these obligations, failed to do so, and his refusal was contumacious.

Mr. Bryce was committed to the Sheriff's custody on March 3, 1993, pursuant to the court's order. He was subsequently released on bond. On March 9, 1993, Mrs. Callis filed her motion for attorney's fees on appeal. After a hearing, her motion was granted, and she was awarded $2,500 toward payment of her attorney's fees on appeal.

Mr. Bryce makes four claims on appeal. He asserts that the trial court abused its discretion in finding him to be in contempt of court because (1) his obligation to pay the two notes to the bank resulted from division of the marital assets and was terminated by his discharge in bankruptcy; and (2) alternatively, if the obligation to pay the notes was maintenance for the support of his former spouse, the obligation ceased upon her remarriage on December 29, 1989, when she remarried. Mr. Bryce also contends that (3)

the evidence at the contempt proceeding proved that he lacked the ability to pay the notes and that his inability to pay the obligations proved his failure to pay the obligations was not intentional and contumacious; and (4) because the record does not support the trial court's finding that he contumaciously did not pay the obligations and because Mrs. Callis is financially better able to pay her attorney fees, the trial court abused its discretion by ordering him to pay Mrs. Callis' attorney's fees.

### Points I and II

For his first point on appeal, Mr. Bryce contends that the trial court erred in declaring him to be in contempt of court after finding that the disputed obligations to pay the indebtedness on his ex-wife's car and house were in the nature of a property settlement. Mr. Bryce argues that any obligation arising from the property settlement was discharged by the bankruptcy court. As point number two, Mr. Bryce argues in the alternative, that if the obligations were for maintenance, Mrs. Callis' remarriage terminated the obligation.[1]

Obligations created under a decree of dissolution of marriage are dischargeable in bankruptcy unless the obligations are for "alimony, support or maintenance." 11 U.S.C. § 523(a)(5). "The legislative history accompanying this provision specifies that '[w]hat constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not State law.' H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 6320." *In re Fitzsimmons*, 110 B.R. 912, 914 (Bankr.E.D.Mo.1990). Assumptions of debts accompanied with agreements to hold the former spouse harmless, unless in the nature of maintenance or support, are dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5)(B). *Fitzsimmons*, 110 B.R. at

---

1. One portion of the agreement dealing with the assumption and payment of the notes states:

    The parties agree that all of the transfers represent a fair and equitable division of such property and are not in exchange for marital rights, such as the right to support.

    Another portion of the agreement recites:

    It is agreed that the assumption of debts in this section of this Agreement is in lieu of support and maintenance and not dischargeable in bankruptcy, and that if these assumptions of debt were not made, then the support and maintenance, or either one, would not be in the same amounts as herein provided.

915. If the debts were in the nature of a property division, the debts were discharged unless we determine that Mr. Bryce somehow reaffirmed the obligation to Mrs. Callis through the reaffirmation agreement Mr. Bryce signed with the Bank.

■ A reaffirmation agreement essentially supersedes the prior agreements, *In re Moore*, 50 B.R. 301 (Bankr.S.D.Ohio 1985); 8A C.J.S. *Bankruptcy* § 350 (1988). It is a new contract between the creditor and debtor that incorporates the terms of the previous debt as they are applicable to that creditor and that debtor. *In re Gitlitz*, 127 B.R. 397, 400 (Bankr.S.D.Ohio 1991). The "reaffirmed" obligation does not obligate the debtor to anyone except the creditor named in the reaffirmation agreement.[2] *See In re Browning*, 31 B.R. 995, 998 (Bankr.S.D.Ohio 1983) (a cosigner is clearly a creditor but is not "the creditor to whom the debt is owed"). The obligation owed to Mrs. Callis arose, not through the cosigned deed of trust or note on the automobile,[3] but rather through the divorce decree. Parties cannot make a property settlement a nondischargeable debt in the dissolution decree merely by stating in the agreement incorporated as part of the decree that the debt is nondischargeable in bankruptcy. 11 U.S.C. § 524(c); *In re Swaringim*, 43 B.R. 1, 3 (Bankr.E.D.Mo.1984). That portion of the agreement is in the nature of a reaffirmation. Reaffirmation of debts of this type must be approved by the bankruptcy court to be valid. *Id.* If the requirement in the dissolution decree that Mr. Bryce pay these two marital debts was in the nature of property settlement, Mr.

Bryce's reaffirmation agreement with the bank did not reaffirm the separate obligation to Mrs. Callis imposed by the decree.[4] The two debts were ultimately paid in full, and Mr. Bryce does not owe the Bank anything on the two notes. Thus, if Mr. Bryce's court decreed obligation to pay the two debts was in the nature of property settlement, Mr. Bryce does not owe anyone any amount for them.

■ Determination of the nature of the contested debts "involves a factual examination of the nature and function of the 'hold harmless' agreement." *Fitzsimmons, supra* 110 B.R. at 914. "[A] bankruptcy court is not bound to accept a divorce decree's characterization of an award as maintenance or a property settlement." *In re Boehmer*, 119 B.R. 703, 705 (Bankr.E.D.Mo.1990) citing *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983).

This court need not determine the nature of the questioned obligations.[5] If the obligations are in the nature of a property settlement they were discharged in bankruptcy. If the obligations were in the nature of maintenance, that obligation terminated at the remarriage of Mrs. Callis unless the decree specifically indicated otherwise. § 452.075, RSMo 1986; § 452.370.2, RSMo 1986; § 452.370.3, RSMo Supp.1990; *Cates v. Cates*, 819 S.W.2d 731 (Mo. banc 1991); *see also Glenn v. Snider*, 852 S.W.2d 841, 843 (Mo. banc 1993) (holding that *Cates* was not retroactive but prior agreements were to be examined to determine whether the parties

---

2. Reaffirmation Agreements are subject to strict requirements and are construed in favor of the debtor. 8A C.J.S. *Bankruptcy* § 350 (1988); *In re Roth*, 38 B.R. 531 (Bankr.N.D.Ill1984), *aff'd*, 43 B.R. 484 (N.D.Ill.1984). For example, the agreement must contain notice of the debtor's right to rescind, must be filed with the bankruptcy court and either be accompanied by a declaration from debtor's attorney that the agreement is voluntary, the debtor is fully informed, and it does not impose a hardship, or, if the debtor is not represented by an attorney while negotiating the agreement, the court must approve the agreement. 11 U.S.C. § 524(c); 8A C.J.S. *Bankruptcy* § 350 (1988).

3. Cosigners' liability to each other is not considered here except within the context of these facts.

4. A debtor may voluntarily make payments on a discharged debt, 11 U.S.C. § 524(f), but the voluntary payment without a proper reaffirmation agreement does not revive the debtor's personal liability. 11 U.S.C. § 524(c), (d); *In the Matter of Magary*, 22 B.R. 164, 166 (Bankr.M.D.Fla. 1982).

5. Were it necessary to determine the nature of the assumption of debt, the language in the agreement, although containing contradictory language, would appear to indicate that the parties intended the assumed debt to be in nature of maintenance rather than as part of a property settlement. *See In re Horton*, 69 B.R. 42 (Bankr. E.D.Mo.1986).

intended maintenance to continue past remarriage).

■ The agreement is void of expressed or implied intent that maintenance was to continue past remarriage. The trial court ordered the payments denominated in the agreement as maintenance terminated. The court did not believe that Mr. Bryce's payments to the Bank following his discharge in bankruptcy were intended as payments of maintenance. *A fortiori*, the trial court did not find a reliance on *Doerflinger v. Doerflinger*, 646 S.W.2d 798 (Mo. banc 1983). *See Snider, supra* 852 S.W.2d at 843–44. Therefore, *Snider* does not require maintenance in this case to survive Mrs. Callis' remarriage. However, if the contested obligations were in the nature of maintenance so as to be nondischargeable in bankruptcy, Mrs. Callis' remarriage terminated Mr. Bryce's obligation to continue to pay the notes.

Mr. Bryce did not owe Mrs. Callis for the two debts subsequent to her remarriage when Mr. Bryce stopped payments to the Bank, and, therefore, his failure to pay the obligations in full or to reimburse Mrs. Callis did not violate the dissolution decree and was not contumacious. Because the trial court's order is reversed, point three is moot.

### Point IV

■ Mr. Bryce, for his fourth point on appeal, asserts that the trial court erred in awarding attorney's fees to Mrs. Callis in the amount of $2,500.00, to enable Mrs. Callis to respond to Mr. Bryce's appeal of the order of contempt. Mr. Bryce contends that he was not in contempt and that Mrs. Callis is in a much better position than he to pay attorney's fees. *Wise v. Crawford*, 695 S.W.2d

487, 491–92 (Mo.App.1985), states that the fundamental issue is whether the ex-spouse is possessed of sufficient means to prosecute the suit on her own. *See also, S— v. S—*, 514 S.W.2d 1, 9 (Mo.App.1974).

At the hearing for attorney's fees, the evidence indicated that Mr. Bryce earned approximately $750.00 a month, had been forced to borrow $5,000 to post bond pending appeal, did not have a balance of any size in his banking accounts, had recently been injured, and did not have any IRAs, CDs or savings.[6] Mrs. Callis testified that she worked approximately thirty hours a week at $7.00 an hour.[7] She held joint assets with her current husband, who worked as a CPA. She no longer owed the bank for the disputed debts. Mrs. Callis testified that the money she received from the sale of the house was "spent ... in various ways, part of it [in] attorney fees." She filed joint tax returns with her husband, yet testified that she was unaware of their gross income. She testified that they had assets that included Mr. Callis' CPA business, a 1991 Lincoln Town Car which she drove,[8] a Blazer that Mr. Callis drove, a house and various bank accounts and IRAs. Other than "thinking" that they jointly held about $1,500 in a savings account and she held about $8,000 in an IRA in her name, she testified that she was unaware of the balances of any other joint accounts.[9]

From the evidence at the hearing, Mrs. Callis has sufficient means to compensate her attorney for this appeal.[10]

Considering the disposition of this cause and the evidence presented at the hearing before the trial court, the trial court's order granting attorney's fees to Mrs. Callis for this appeal is reversed. The trial court's

---

**6.** The quarter horse training corporation in which Mr. Bryce is the sole stockholder showed a taxable income (loss) of $1,287.00> for 1991 and $6,973> for 1990.

**7.** Approximately $910.00 a month.

**8.** The car she received as part of the divorce agreement, which was the subject of the contested "hold harmless" agreement, had been "traded in" on the Lincoln.

**9.** The bankruptcy trustee's check to Mrs. Callis in the $1,595.29 in settlement for her claims was returned to the bankruptcy court.

**10.** The attorney's figures at the hearing apparently anticipated the time to travel from Moberly to Kansas City for oral argument. Argument normally occurs in Kansas City, but argument in this case was actually heard at a special session in Kirksville.

order finding Mr. Bryce in contempt of court is reversed.

All concur.