**Barbara J. ENGEMAN, Respondent,**

v.

**John M. ENGEMAN and Vincent A. Engeman, Appellants.**

**Nos. WD 61981, WD 62109.**

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

Neysa L. Day, Kansas City, for appellant.

Patrick William Campbell, Independence, for respondent.

RONALD R. HOLLIGER, Judge.

John M. Engeman ("Husband") and Vincent Engeman, his father, appeal the judgment and decree of dissolution entered by the Circuit Court of Jackson County raising seven allegations of error, six of which present preserved issues for this court's review. Vincent Engeman ("Father") was joined as a party because real estate was titled jointly with Husband and Father and because Wife claimed that Husband and Father were partners in a business. First, Husband and Father contend that the trial court erred in finding that five parcels of jointly titled property were fifty percent marital property. Second, Husband and Father argue that the trial court erred in holding that half of Husband's interest in a former partnership with Father was marital and that Husband had squandered that interest. Third, Husband takes the position that the trial court classified too great a percentage of one of his annuity accounts as marital property. Fourth, Husband argues that the Form 14 adopted by the trial court erroneously failed to impute income to Wife, improperly included costs of private schooling for one of the parties' children, and imputed income to Husband despite evidence of his inability to work due to disability. Fifth, Husband argues that the trial court abused its discretion in ordering him to pay all of Wife's attorney fees without first taking into consideration the parties' financial condition and their ability to pay those fees. Sixth, Husband contends that the judgment should be reversed because it erroneously denoted certain monetary awards to Wife as being non-dischargeable in bankruptcy.

After a review of each of the above points on appeal, we conclude that the judgment is not against the weight of the evidence, is supported by substantial evidence, and does not constitute an abuse of

discretion. We, therefore, affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Husband and Barbara J. Engeman (Wife) were married on November 10, 1984. On June 20, 1999, Wife filed her petition for dissolution of marriage. While the case was pending, Husband's father, Vincent A. Engeman, was joined in the action as a third-party respondent. Father was Husband's partner[2] in J.V. Sales, an auto-parts business, and appeared as a co-owner of a number of parcels of real estate. As there were questions raised regarding the value of Husband's share of the partnership and whether that interest and the real estate (or some portion thereof) were marital property, Father was made a party to the case.

The matter proceeded to trial on March 20, 2002, with evidence being heard over a number of days through the subsequent months, with the case being taken under advisement on June 25, 2002. The trial court entered its judgment and decree of dissolution on August 30, 2002.[3]

The trial court awarded the parties joint legal and physical custody of the two children to but ordered that the children reside with Wife, based upon the statutory factors set out in § 452.375, RSMo 2000. Husband does not challenge the trial court's custody determinations. Husband was ordered to pay child support to Wife in the amount of $505 per month. The trial court also entered judgment against Husband in the amount of $3,992.42, due to arrearages under a prior order of temporary child support.

In addition to the parties' miscellaneous personal property and the marital residence (the division of which is not contested by any party), the trial court made specific findings with regard to a number of items of real and personal property. The trial court also found that Husband had squandered a number of bank accounts, totaling $18,318.45, and ordered Husband to reimburse Wife for half of that value.

The trial court also found that Husband was a partner with Father in J.V. Sales and owned a fifty-percent interest in the partnership, which he squandered by voluntarily surrendering his interest on December 31, 1999. The trial court found that the partnership had assets in the amount of $48,732.34 and granted Wife judgment against Husband in the amount of $12,183.09, half of Husband's fifty-percent interest in the partnership.

---

1. As a preliminary note, we observe that record on appeal filed by appellants appears to be essentially a duplicate of the *entire* contents of the trial court's file. As such, it contains many items such as motions, continuance requests, letters, and other items not material to the issues at bar. In addition to making the record on appeal unacceptably voluminous, it constitutes a violation of Supreme Court Rule 81.12(b). The parties are cautioned to follow that rule in future matters before this court.

2. It is not clear when the partnership first arose, as there was no formal, written partnership agreement. For a significant span of time, until some time in 1993, there was also no separate bank account for the partnership. Prior to that point, the partnership funds flowed through Father's "personal" account at Montrose Savings Bank. It does not appear from the record that separate books or either Father or Husband maintained records for the partnership. The partnership tax returns denominated Husband and Father as each having a fifty percent interest in the business, both in terms of ownership of capital and distribution of profits.

3. This judgment was amended on April 7, 2003, by leave of this court, to include the parenting plan that was inadvertently omitted from the original judgment.

Five parcels of real estate were also addressed in the judgment. These five parcels were purchased during the marriage by Father and titled in the names of Husband and Father, as either tenants in common or joint tenants with the right of survivorship. Husband testified that he was not aware that he was on the titles to those properties. Father testified, in an attempt to rebut the presumption that the real property was marital property, that Husband's name was added to the titles as a gift and for estate planning purposes. Wife contended that those properties were not gifts to Husband but were instead partnership property, purchased from an account in which partnership funds were commingled or that the properties were given to them as a couple. The trial court found that the statutory presumption that the property was marital had not been rebutted by clear and convincing evidence. It entered judgment against Husband in the amount of $31,500, for Wife's share of the marital property of the real estate held jointly by Husband and Father.

## DISCUSSION

■ As with other court-tried cases, we review dissolution judgments under the standard provided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm unless we determine that the trial court's judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously states or applies the law. *See Hoffmann v. Hoffmann*, 676 S.W.2d 817, 822 (Mo. banc 1984).

■ In regard to challenges that the trial court's judgment is not supported by substantial evidence, we view the evidence in the light most favorable to the judgment and accept all reasonable inferences from the evidence which support the judgment. *Alongi v. Alongi*, 72 S.W.3d 592, 594 (Mo.

App.2002). We must disregard all contrary evidence and inferences. *Id.* When a party contends that the judgment is against the weight of the evidence, we will only reverse if we are firmly convinced that the judgment is wrong. *In re Marriage of Dieterle*, 960 S.W.2d 556, 557 (Mo. App.1998).

### *Martial Interest in Real Estate Held by Husband and his Father*

In their first point on appeal, Husband and Father appeal the trial court's determination that five parcels of real property titled in both Husband and Father's names was fifty percent marital in nature. They contend that the trial court's finding was not supported by substantial evidence and was against the weight of the evidence. Specifically, they claim that those assets were gifts from Father to Husband, purchased with Father's own funds, with the intent that they would serve as an estate planning measure.

■ Section 452.330.3, RSMo, states that all property acquired by a spouse after marriage and prior to a decree of separation or dissolution is presumed to be marital property. *Comninellis v. Comninellis*, 99 S.W.3d 502, 507 (Mo.App.2003). That presumption can only be overcome by proving, by clear and convincing evidence, that the property falls within an exception to that presumption. *Summerville v. Summerville*, 869 S.W.2d 79, 85 (Mo.App. 1993) (overruled in part on other grounds by *Schriner v. Edwards*, 69 S.W.3d 89,93 (Mo.App.2002)). "Clear and convincing evidence is evidence that 'instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *Randolph v. Randolph*, 8 S.W.3d 160, 168 (Mo.App.1999) (quoting *In re Marriage of*

*A.S.A.*, 931 S.W.2d 218, 222 (Mo.App. 1996)).

■ Five exceptions are enumerated in Section 452.330.3, although the list is not exclusive. § 452.330.2, RSMo; *Silcox v. Silcox*, 6 S.W.3d 899, 903 (Mo. banc 1999). The exception that Husband and Father sought to rely upon, here, is one of the statutory exceptions. Specifically, they contend that the real property in question is not marital property because Husband received it as a gift from his Father. As the party seeking to invoke an exception to the statutory presumption, they bear the burden of showing clear and convincing evidence that the real property was a gift.[4] *Boschert v. Boschert*, 73 S.W.3d 869, 873 (Mo.App.2002).

The five parcels of land were: (1) a parcel of farmland in Henry County purchased from Carl and Theresa Bettels; (2) an adjoining parcel of land in Henry County purchased from Chris Sickman; (3) Lot ten in block 21 in Appleton City, purchased from the trustees of American Legion Post # 205; (4) Lots eleven and twelve in Appleton City, purchased from Ronald and Barbara Smith; and (5) a portion of Lots fifteen and sixteen in block six in Montrose purchased from Ivan and Nadine Hergesheimer. The Smith, Sickman, and American Legion properties were titled in the names of Husband and Father as joint tenants with right of survivorship. The Hergesheimer and Bettels parcels were titled in Husband and Father's names as tenants in common.

■ Father testified that he placed Husband's name on those properties solely as an estate planning mechanism. The trial court expressly found that testimony to be not credible. "When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility." *Beckham v. Beckham*, 41 S.W.3d 908, 911–12 (Mo.App.2001). Husband and Father attempt to discount that credibility finding by arguing that the judgment entry was drafted by Wife's counsel and that the trial court "gave it less than careful consideration." Leaving aside the fact that this argument relies upon facts outside the record, the trial court's findings bear no different weight regardless of whether the judgment entry is prepared by the trial court or by one of the parties. *See Lemon v. Lemon*, 819 S.W.2d 94, 95 (Mo.App. 1991).

The bulk of their remaining argument is that the trial court's findings (including its credibility finding) were not supported by substantial evidence and were against the weight of the evidence. With regard to both standards, the trial court's credibility determination is defensible, as there was no other evidence to substantiate Father's claim regarding his intent in including Husband's name on the titles. *See, e.g., Shelton v. Shelton*, 29 S.W.3d 400, 403 (Mo.App.2000).

Husband and Father cite a significant number of cases in support of their position: *Kauffman v. Kauffman*, 101 S.W.3d 35 (Mo.App.2003); *In re Marriage of Felkner*, 847 S.W.2d 144 (Mo.App.1993); *Summerville v. Summerville*, 869 S.W.2d 79

---

4. Husband and Father, however, attempt to shift that burden onto Wife by arguing that she bore the burden of establishing that the parcels of real property were partnership property, relying upon *Thomas v. Lloyd*, 17 S.W.3d 177, 183 (Mo.App.2000). In *Thomas v. Lloyd*, the Southern District held that property purchased jointly by two partners and titled in partners' names was presumed to be separate property of the partners and not partnership property. *Id.* at 184. That case, however, is inapposite, as it did not involve the statutory presumption at play here.

(Mo.App.1993); *Tubbs v. Tubbs,* 755 S.W.2d 423 (Mo.App.1988); *In re Marriage of Herr,* 705 S.W.2d 619 (Mo.App. 1986); and *Duley v. Leininger,* 527 S.W.2d 456, 460 (Mo.App.1975). Each of these cases, save one, concerns a substantially different presentation of the issue, however, as they involved challenges to trial courts' findings that certain property was nonmarital. In other words, they involve challenges to a finding that the statutory presumption had been overcome. Only one of the cases cited by Husband and Father, *In re Marriage of Johnson,* 856 S.W.2d 921, 926 (Mo.App.1993), involved the reversal of a trial court's determination that certain property was not a gift and was marital property. In that case, the appellate court found that certain specific factual findings made by the trial court and relied upon by it in finding that the property was marital were unsupported by the record. *Id.* at 926–27.

Again, it was the burden of Husband and Father to come forward with clear and convincing evidence that the property was a nonmarital gift. In addition to the trial court's credibility finding, there was additional evidence undermining their claim of donative intent. Principally, most, if not all, of the parcels were purchased (at least in part) using assets of the J.V. Sales Partnership. Of the five parcels, four were purchased using funds from Father's account with Montrose Savings Bank. That account contained both Father's personal funds and commingled funds from the J.V. Sales Partnership.

■ A number of the purchased properties were also used in the partnership business to store inventory of the business. Husband and Father correctly point out that, in *Thomas v. Lloyd,* that fact was not sufficient, standing alone, to rebut the presumption that property titled in the partners' names was not partnership property.

17 S.W.3d at 183. Here, however, there is one substantial factual difference between *Thomas v. Lloyd* and the present matter. Specifically, in *Thomas,* the property was purchased using funds that were not partnership funds. *Id.* Here, partnership funds were employed to purchase those properties. The use of partnership funds supports a conclusion that Husband and Father did not prove by clear and convincing evidence that Husband's name was placed on the title as a gift.

■ Husband and Father point out, however, that partnership funds were not used in purchasing the Bettels farmland. That farmland was purchased using funds drawn from an account at Boatman's Bank held jointly between Father and his wife, Bette Engeman. Father contends that this account never held funds from the partnership, nor does Wife suggest that commingling took place with regard to that account. Both Father's testimony and the documentary evidence support his claim that the funds used to purchase that parcel of land came from a separate account that did not have partnership funds in it. It appears from the record that that farmland may have been leased out for farming purposes and was not used in the partnership business. However, there was also testimony that Husband took Wife to the property and told her that it was theirs, as well as made representation to others that it was "their farm." Belying Husband and Father's claim that the transfers were an estate planning tool is the titling of the property as tenants in common. Under that form of tenancy, Husband acquired an alienable present fee interest in the property and had no right of inheritance to Father's share through the deed. Nevertheless, Father and Husband can still prevail if they prove by clear and convincing evidence that Husband's

tenancy in common interest in the Bettels farm was a gift from father.

Although the evidence is not as strong with respect to this parcel as the others, Husband and Father do not fully consider the difficulty they face in carrying the burden of overcoming the marital property presumption and the weight of that burden. The trial court's conclusion as to this parcel is supported not only by the statutory presumption but also by Husband's statements and the trial court's credibility finding. We cannot say that the countervailing evidence instantly tips the scales in favor of rebutting the presumption or that we are firmly convinced that the trial court was wrong.

Point denied.

### Squandered Bank Accounts

Husband's second point on appeal is identical in wording to his first point on appeal. The argument following that point, however, appears to concern the trial court's finding that Husband had squandered a number of bank accounts. Wife contends that we should deem the point on appeal abandoned due to the deficiency of the point on appeal.

As a general rule, it is preferable to dispose of an issue upon the merits rather than to deem an argument abandoned on appeal due to technical deficiencies in the brief. *See State v. Brundage*, 85 S.W.3d 43, 47 (Mo.App.2002). However, if a party fails to substantially comply with Rule 84.04, then their argument on appeal is not preserved. *See Luckeroth v. Weng*, 53 S.W.3d 603, 606 (Mo.App.2001). Here, we are dealing with more than a technical deficiency; the point on appeal and the argument are completely different. Nor does the argument clearly indicate what is the precise issue on appeal. Attempting to glean those issues would place this court into the role of advocate. An

"appellate court should not become the appellant's advocate by ferreting out facts, reconstructing points, and deciphering arguments." *Rasse v. City of Marshall*, 18 S.W.3d 486, 489 (Mo.App.2000). We, therefore, deny Husband's second point on appeal as improperly preserved.

### Marital Interest in the J.V. Sales Partnership

Husband and Father's third point on appeal contends that the trial court erred in finding that Husband had a fifty percent marital interest in the assets of the J.V. Sales Partnership. They also argue that the trial court erred in finding that those assets had been squandered. Specifically, they argue that the evidence established that the partnership had no assets after consideration of the partnership's debt to Father, in the form of his initial $63,000 capital investment. At the time of dissolution, they contend, the partnership did not have sufficient assets to repay that investment, leaving no surplus assets to which a marital interest could attach. The partnership tax filings and Husband's discovery responses to the partnership tax filings and Husband's discovery responses contradicts this argument. Wife also contends that there was no evidence that Father made a capital contribution of $63,000 to the partnership.

The evidence clearly supported the trial court's finding that Husband had a fifty-percent ownership interest in the J.V. Sales Partnership and its assets. The partnership's tax returns indicated that each of the partners had a fifty-percent ownership interest in the partnership capital, as well as sharing in fifty percent of the profits. Husband's discovery responses also variously indicated that he held a thirty- to fifty-percent ownership interest in the partnership.

■ Granted, Husband and Father testified that he was just a "labor partner" having no ownership interest in the partnership. However, when the trial court hears conflicting evidence, it lies within the court's discretion to decide which evidence is more credible and it may reject all, part, or none of a party's testimony. *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996). Father and Husband's testimony regarding the percentage of Husband's capital ownership conflicted with the partnership tax returns that were admitted into evidence. The trial court was, therefore, obligated to determine which statements were false, either the trial testimony or the income tax filings. The trial court is in a superior position to judge the credibility of witnesses when it hears live testimony. *See Graue v. Mo. Prop. Ins. Placement Facility*, 847 S.W.2d 779, 786 (Mo. banc 1993). Thus, we defer to the court's view of the facts and will not reverse merely because the evidence would also support a different result. *Buchanan v. Buchanan*, 828 S.W.2d 946, 949 (Mo.App.1992).

■ This leaves the question of Father's capital contribution to the partnership. Apparently, at the time a separate bank account was set up for the J.V. Sales Partnership, Father transferred $63,000 from his "personal account" at Montrose Savings Bank to the partnership account. That "personal account" was apparently the same account that partnership funds had been commingled into, as discussed in the first point on appeal. As such, some portion of those funds was not Father's funds, but partnership funds. Thus, only some of those funds could be considered a capital contribution by Father. Neither Father nor Husband direct us to evidence indicating the amount of partnership funds commingled into that account or otherwise clarifying what amount was Father's own funds. This lack of evidence regarding the

amount of Father's capital contribution, together with the tax filings representing that Husband had a fifty percent capital ownership interest, was sufficient basis for the trial court to conclude that the partnership treated Husband as having made an equal capital contribution. Upon that basis, the trial court could properly remove the issue of unequal capital contributions from consideration in determining the value of Husband's interest in the partnership.

■ Husband and Father raise another argument as grounds for finding error by the trial court. They contend that there was no evidence of the increase in value of Husband's interest in the partnership or that marital assets caused or contributed to the increase in value. This argument, however, falls outside of their stated point on appeal and, therefore, preserves nothing for appeal. *See, e.g., State v. Wallace*, 825 S.W.2d 626, 632 (Mo.App. 1992). Similarly, in passing, they argue that Husband was not a partner at all, yet this is contradicted by the remainder of their argument which describes Husband as a partner in the business.

Husband and Father's third point on appeal is denied.

### Husband's Annuity Fund

■ For his fourth point on appeal, Husband challenges the trial court's determination that a percentage of his Visionary annuity fund was marital property. The Visionary annuity fund originated as a profit sharing plan funded by one of Husband's former employers, Smitty Van Conversions. That employer hired husband approximately twenty-five months prior to the marriage in November 1984, and he remained employed until April 1989. The division of that account was apparently made upon the ratio of the time he was

employed by the company before and after the marriage.

The trial court found that the Visionary annuity fund was divided into marital and non-marital property as follows:

| | |
|---|---|
| Non–Marital (set aside to Husband): | $ 9,366.43 (32.5%) |
| Marital (set aside to Wife): | $19,453.36 (67.5%) |
| **Total:** | **$28,819.79** |

Husband contends that this division was inaccurate because it failed to reflect that the profit-sharing plan was eliminated roughly twenty-five months after the marriage. He argues that, at best, the annuity should have been treated as only fifty percent marital.

His Statement of Marital and Non Marital Assets and Debts, however, does not support husband's arguments. On that statement, Husband listed the Visionary fund as *marital* property (under the name "Smitty Van Conversions profit share"). Husband argues on appeal that he listed only a portion of that account as marital property. However, this is not reflected by a separate entry for the non-marital portion of that account in the appropriate section of the Statement of Marital and Non Marital Assets and Debts.

Even accepting Husband's position regarding the Statement, the Statement supports the trial court's division of the asset. In the Statement, Husband valued the marital portion of that asset at $21,604.39. The trial court's determination that 67.5 percent of the annuity fund was marital property is similar to (albeit less than) the ratio claimed by Husband in the Statement. We find that the trial court's division of that asset was supported by substantial evidence and was not against the weight of the evidence. Point denied.

*Child Support Calculations*

■ Husband's fifth point on appeal raises three challenges to the Form 14 calculation adopted by the trial court. First, Husband contends that the trial court erred by failing to impute income to Wife, even though she was only working part time and fully able to work full time. Second, Husband argues that the trial court committed reversible error by including private school expenses for the parties' daughter in the Form 14 calculation because there was no evidence that the daughter had any special educational needs to justify that expense. Third, Husband claims that the trial court erred in imputing income to him, despite evidence that he was unable to work due to disability.

Husband first argues that the trial court should have imputed income to Wife because she was working an average of thirty hours per week and was fully capable of working full time. He takes the position that the Form 14 calculation should have stated Wife's income as $2,600 per month, as opposed to the $2,000 employed by the trial court.

■ The trial court has discretion in determining whether income should be imputed to a party for purposes of making child support calculations. *See Lavalle v. Lavalle,* 11 S.W.3d 640, 650 (Mo.App.1999). Imputation decisions must be made on a case-by-case basis and only when appropriate circumstances are present. *See id.* It is not unusual for a court to decline to impute income to a custodial parent. *See id.* (citing numerous cases to that effect).

■ Wife contends that Husband has not preserved this issue because he did not present a Form 14 calculation of his own. A party waives challenges to the

calculation of child support unless they submit a completed Form 14 to the trial court. *Yun v. Yun,* 908 S.W.2d 787, 791 (Mo.App.1995). If one spouse files a Form 14 and the other spouse does not, it signals the latter spouse's agreement with the filed Form 14. *Allen v. Allen,* 961 S.W.2d 891, 894 (Mo.App.1998). Review of the record on appeal reveals that Husband did file a Form 14 with the trial court while the case was pending. This Form 14 was also admitted into evidence, though admittedly at the behest of Wife.

That said, however, Husband's Form 14 does not support his argument on appeal. Specifically, that Form 14 imputes no income to Wife. Husband cites no reference to the record where he made any request that the court impute income to Wife. While Husband cites authority that the court must reject a Form 14 if there are any errors in including or excluding amounts or errors in calculation, the alleged error is not one of calculation. Instead, it concerns a claim that the trial court failed to make a discretionary decision.

We conclude that Husband's argument is not properly preserved for appeal. Husband never asked the trial court to impute income to Wife. We will not convict the trial court of error in failing to rule upon an issue that was not presented to the trial court and has been raised for the first time on appeal. *Landvatter Ready Mix, Inc., v. Buckey,* 963 S.W.2d 298, 303 (Mo.App.1997).

Husband's second argument in this point concerns the inclusion of certain private school expenses for the parties' daughter. Prior to the filing of the dissolution petition, both of the parties' children attended private school. After the summer of 2000, the son was placed in public school, while the daughter remained in private school. He contends that he objected to having the daughter remain in private school. Husband contends that the trial court could not include those educational expenses in the Form 14 calculation, absent agreement by him to those expenses or a showing by Wife that their daughter had special educational needs that required private schooling.

Costs of private school education may be included as an "other extraordinary child-rearing cost," provided the parents agree or the court orders that the parents contribute to payment of those costs. *McCandless–Glimcher v. Glimcher,* 73 S.W.3d 68, 73 (Mo.App.2002). When a parent does not agree to those expenses, the trial court must determine that private education will meet the particular educational needs of the child. Husband appears to argue for a more restrictive view, arguing that *special* needs must be shown before an unwilling parent may be required to share the costs of the child's private education.

In any event, we need not reach this issue, as the record does not establish that Husband objected to Daughter's continued private school education. The only evidence in the record that Husband cites is a portion of Wife's testimony where she discusses statements made by the parties' son. Those statements concerned the son's desire to change from private to public school at the end of the summer of 2000 because Husband "couldn't afford Catholic school for him," and statements by the son to his sister that she should move to his school because "[i]t's too much money for Mom to be spending." Nowhere does that testimony show that Husband objected to the daughter's continued private schooling. Husband cites to no other testimony where he raised any objection to his daughter's continued private schooling. On the basis of the record before it, the trial court could properly conclude that the parties agreed

that the daughter should continue her education in private school.

■ Husband's last argument under this point contends that the trial court abused its discretion in imputing income to him. The extent of his argument is that "[i]t was patently unfair of the trial court to impute income to [Husband] based upon historical earnings when he testified he was disabled from employment due to back surgery and was not earning an income of $20,000 per year, while at the same time, accepting the Form 14 of Respondent based upon only part time earnings." He offers no legal grounds for the claimed error, cites no case law, or engages in further analysis. We deem the issue abandoned. *See Brown v. Whitaker*, 926 S.W.2d 1, 5 (Mo.App.1996).

### The Attorney Fee Award

In his sixth point on appeal, Husband contends that the trial court erred in awarding Wife $11,949.92 in legal fees because it did not consider the parties' financial resources and because it was based on Wife's testimony that she was entitled to the award because Husband had not paid all of his temporary child support.

Here, the trial court's award of attorney fees involved the following findings: "The Court finds that [Wife] has incurred reasonable and customary attorney fees in the sum of $11,949.42.[5] The Court finds that [Husband] has failed to cooperate in the pendency of this action and has caused [Wife] to unnecessarily incur additional attorney fees." Here, Wife focuses upon Husband's lack of cooperation during the litigation as establishing sufficient grounds for the award of attorney fees. Non-coop-

eration and dilatory tactics can form the basis for an attorney fees award.

■ A trial court has the discretion to award attorney fees in a dissolution proceeding pursuant to Section 432.355.1, RSMo, and its award is presumed correct on appeal. *Cohn v. Cohn*, 841 S.W.2d 782, 787 (Mo.App.1992). We reverse only upon a showing that the trial court abused its discretion. *See Hoffmann v. Hoffmann*, 676 S.W.2d 817, 828–29 (Mo. banc 1984). The court abuses its discretion when "the amount awarded is arbitrarily arrived at or so unreasonable as to indicate indifference and lack of proper judicial consideration." *Thompson v. Thompson*, 853 S.W.2d 410, 413 (Mo.App.1993) (quoting *Burden v. Burden*, 811 S.W.2d 818, 822 (Mo.App.1991)).

Section 432.355, RSMo, has been interpreted as requiring a court to inquire into the parties' financial conditions before making an award of attorney fees. *Rupnik v. Rupnik*, 891 S.W.2d 548, 549 (Mo.App.1995). While none of the parties point us to anything in the record which indicates that the trial court heard evidence or considered the parties' financial conditions in making its attorney fee award, those conditions were clearly part of the record as part of the trial court's child support determinations.

■ We also note that where misconduct has taken place, a trial court may grant a partial award of attorney fees, even where the parties' financial condition does not otherwise necessitate an award of fees. *See T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655 (Mo. banc 1989). A party's actions during the course of litigation may be considered in reaching a determination of

---

**5.** This amount is the full sum of Wife's attorney fees. Husband contends that there was no evidence regarding the hourly rate charged by counsel nor the amount of time involved. This incorrectly states the record, as counsel filed his billing records as Exhibit 65.

whether to make an attorney fees award, especially when those fees unfairly resulted from the other party's conduct. *See Taylor v. Taylor*, 12 S.W.3d 340, 348 (Mo. App.2000); *Runyan v. Runyan*, 907 S.W.2d 267, 273 (Mo.App.1995).

 Here, the trial court has ordered Husband to pay *all* of Wife's attorney fees upon a finding that Husband committed misconduct while the case was pending. The trial court did not differentiate between fees resulting from Husband's conduct during the litigation and those that did not. Obviously, not all of Wife's attorney fees were the result of Husband's conduct during the case. However, at least some portion of her attorney fees resulted from Husband's concealment of assets and attempts to evade enforcement of the temporary child support order. The trial court did not abuse its discretion to the extent that it awarded those attorney fees to Wife which were incurred as a result of Husband's conduct.

This leads us to the question of whether the trial court abused its discretion in awarding Wife the remainder of her attorney fees. We note that the trial court did not provide an alternate justification for awarding those fees. However, Husband did not request that the trial court make specific findings of fact regarding the attorney fees issue. The cases do not require the trial court to make findings regarding the financial condition of each party before making an attorney fees award. Instead, it requires only that the court consider those matters. Husband does not raise any argument that the parties' financial conditions do not support the attorney fees award.

We conclude that the trial court did not abuse its discretion in awarding Wife her attorney fees. Husband's sixth point on appeal is denied.

*Dischargeability Language Regarding Certain Monetary Judgments*

 In his final point on appeal, Husband argues that the trial court erred by denominating certain money judgments in favor of Wife as non-dischargeable in bankruptcy. Husband correctly points out that obligations created in a dissolution decree are dischargeable in bankruptcy unless they are in the nature of alimony, support, or maintenance. *Callis v. Bryce*, 872 S.W.2d 539, 541 (Mo.App.1994). Obligations in the nature of property division are dischargeable in bankruptcy. *Id.* at 542. Classification of those obligations is a matter of federal bankruptcy law, not state law. *Id.* at 541.

 To the extent that the trial court's judgment denominated certain obligations as nondischargeable in bankruptcy, that language is surplusage. *See Price v. Price*, 921 S.W.2d 668, 674 (Mo.App.1996). It is not binding on the bankruptcy court and does not present an issue for review by this court. *Id.* Husband's final point is denied.

## CONCLUSION

Having reviewed each of Husband and Father's preserved points on appeal, we hold that the trial court did not commit reversible error in its judgment and decree of dissolution. That judgment is, therefore, affirmed.

PAUL M. SPINDEN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.